UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ILLINOIS


STEVEN D. LISLE. JR #R40159
    Plaintiff / Petitioner(s)

) Case Number 15-965-MJR
) ☑ Civil Rights Complaint
) Pursuant to 42 USC

KIMBERLY BUTLER AND MENARD CORRECTIONAL EMPLOYEES
    AND
ADMINISTRATIVE REVIEW BOARD
    Defendants / Respondents

) § 1983 (State Prisoner)
)
) (JURY-TRIAL)
) (REQUESTED)

## 1. JURISDICTION & VENUE

This is a civil action authorized by 42 U.S.C. Section 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States. The Court has Jurisdiction under 28 U.S.C. Section 1331 and 1343 (a)(3). The united States District Court for the Southern District of Illinois is an appropriate venue under 28 U.S.C. Section 1391 (b)(2) because it is where the events giving rise to this claim occured. Memorandum of law attached to Complaint

## PLAINTIFFS

2. Plaintiff, Steven D. Lisle JR, is and was at all times mentioned here in a prisoner of the State of Illinois in the Custody of the Illinois Department of Corrections. He is currently confined in Pontiac Correctional Center, in Pontiac Illinois.

## DEFENDANTS

3.
| | | Position / Title |
|---|---|---|
| A | Kimberly Butler | Warden |
| B | Willborne | Luietenet |
| C | Kente Brookman | Chair Person of Adjustment Committee |

1

| | | |
|---|---|---|
| D | Dunbar | Correctional Employee |
| E | C. McClure | Correctional Employee |
| F | Sammauel | Luietenet |
| G | Spiller | Internal-Affairs |
| H | Ramon | Correctional Employee |
| I | Young | Correctional Employee |
| J | Susan Hill | Counselor |
| k | Hoff | Internal-Affairs |
| L | Jordin | medical staff |
| M | Horman | medical staff |
| N | John Doe | medical staff-Doctor |
| O | Jane Doe | medical Staff- Doctor |
| P | John or Jane Doe | Grievance officers |
| Q | Menard Employees | medical Care |
| R | Jana South | medical Staff |
| S | Charlette Midget | medical Staff |

Each defendant is sued individually and in his or her official Capacity at all times mentioned in this Complaint each defendant acted under the color of State Law

Employers Name and Address of Defendant Stated above
711 Kaskaskis Street Menard Correctional Center Menard, Il 62259

**T.** T. S. keen                                Office of inmate issues

**U.** Administrative Review Board-Office of inmate Issues

Employers Name and Address of Defendant Stated above

Each defendant issued individually and in his or her official Capacity at all times mentioned in this Complaint each defendant

acted under the color of state Law

1301 Concordia Court Springfield, Illinois 62794-9277

PREVIOUS LAWSUITS

4. Have you begun any other Law suits in state or federal Court relating to your imprisonment ☑ NO

FACTS

5. On 8-12-14 at Menard Correctional Center inmate Lisle was returning from the institution gym, upon arriving in front of the East House while in the inmate line formation that all inmates have to walk in pairs of (TWO'S) Lisle saw internal affairs (Officer Spiller) leaving out the East House walking and holding a clear test tube in his hand. Lisle saw the test tube filed with a light yellow liquid substance. At this time Lisle ask Spiller what was the substance he had in the tube. Spiller replied in a "Joking" manner why it isn't yours is it. Lisle stated not at all! Do to Lisle having a well known history as being employed as a Jaintor in Menard Facility he has a good relation ship with most Correctional officers. Which is why Lisle spoke to Spiller. After arriving in the East House, while walking past the officer cage Lisle saw a clear bag with an Orange liquid substance with a String tied around the top of the bag. From the bag's position it appeared the bag was never opened. Lisle then arrived at his cell located at 6-25 at this time Lisle saw that his cell light was on and his cell had been "ramsack" Upon entering his cell he "noticed" his Cellmate (Brian Thurman #M37119) who is a white male inmate who also resided in cell 6-25 property box was missing from the cell. After about two minutes had passed Lisle "notice."

3

that his Cellmate Thurman had not arrived at the cell this made
Lisle look down the gallery to see why his cellmate had not arrived
at the cell. Do to security reason's enforced by the ~~there~~ correctional
institution inmates are "required" to close their cell doors by the time
Correctional officers arrived to make sure all inmates cell's doors
were secured and in their proper cell location. Lisle saw his
Cellmate Thurman at the end of the gallery next to correctional
Officers. After (Ramon) who was assigned to guard 6ᵗʰ gallery
secured all cell's and arrived at hisle cell location and closed
the door, then dead locking Lisle door he advised Lisle that his
Cellmate Thurman had "refused" to lock up and that he found
Contraband in both inmates cell and that he will be issuing
a disciplinary report. Ramon returned back to Lisle cell shortly
and advised Lisle to pack his property and he was going to
Segregation. Lisle then asked officer Ramon why he was going to
the segregation unit? He then replied that he found contraband in Thurman
Property box which internal affairs advised him he tested and determined
it to be 7% Alchol Lisle informed Ramon that he should talk to
Thurman Lisle cellmate. Because the contraband belong to Thurman. As Lisle
and Ramon walk down the stairs they encountered inmate Thurman
Lisle advised him to take his weight "meaning" responsability for
Contraband who then "stated" infront of the (L.T. Sammuel) that it
was his contraband and he's going to take responsability for the
Contraband. L.T. Sammuel then told Ramon to take Thurman back
to the cell at this time Lisle heard (officers) in the cage
talking "loud" in which a statement was made take that hole some

"Whiteman" back to his cell and get that "Coon" out my cell house and to segregation where he belong. L.T. Sammuel stated to Lisle as he walk him to the segregation unit that he had to inform internal affairs that Thurman stated the contraband was his. Lisle saw that Thurman was not being brought to segregation this violated Lisle equal protection and was part of the indifference treatment by Lisle being took to segregation and Thurman was not do to him being white. Lisle was then confined and housed at the North II segregation unit. Later that evening Lisle recieved a Disciplinary report by (Officer Dunbar) Lisle then informed Dunbar that he wanted to sign the Disciplinary Report, So he could put L.T. Sammuel down as a witness who would testify Thurman stated that his contraband was his. Dunbar refused to let Lisle use his pen to sign the disciplinary report. This violated Lisle Due process rights. By Lisle being confined in segregation and deprived of all his "property" and not allowed a pen in which the administration of Menard Knows an inmate will need to sign his ticket as well include witnesses if he choses this is the indifference that denies Lisle his equal protection and due process which allows him to call witnesses in his disciplinary proceedings. Lisle then advised Dunbar to "notify" the (North II sgt.) So Lisle could inform him that he wanted to call L.T. Sammuel as a witness. The following day Lisle was visited by his (Counselor Tonya Knust) during her routine check Lisle informed her that he wanted to speak to Internal Affairs and that he wanted L.T. Sammuel called as a witness do to Dunbar refusing to let Lisle use his pen to add L.T. Sammuel

as a "witness" on his disciplinary report. Tonya knust did inform internal affairs. Lisle was visited that night by internal affairs (officer Hoff) Lisle advised him that he wanted L.T. Sammuel called as a witness do to Dunbar refusing to let him use his pen to add L.T. Sammuel as a "witness" on his disciplinary report. And that he has a due process right to call witnesses in his disciplinary proceedings. Hoff advised Lisle that he would "notify" the adJustment committe to call Lisle witness by Hoff failure to inform the adJustment committe after Lisle made him aware of his due process right. Hoff "knew" he would be dening Lisle his due process right. This made Hoff liable by "knowing" if he did not inform the adJustment committe of Lisle witness it would denie his due process. The next day Lisle was called to the addustment committe to hear his disciplinary ticket. Lisle advised (L.T. Brookman) the chairman that he requested L.T. Sammuel to be called as a witness and that do to Dunbar "refusing" to let Lisle use his pen to add L.T. Sammuel as a witness on his disciplinary report. Lisle made all the necessary steps to notify the adJustment committe by informing Dunbar - Tonya knust- Hoff that he requsted L.T. sammuel as a witness. Lisle then plead not guilty and informed L.T. Brookman that the contraband was found in his cellmate Thurman legal box and that Thurman informed L.T. Sammuel that the contraband was his. And that he requested L.T. sammuel to be called as a witness and that he would testify to this account that Thurman "advised" him that the contraband was his. L.T. Brookman

1

then stated he would call L.T. Sammuel as a witness and that if Thurman takes responsibility for the contraband Lisle would be released from segregation and if Thurman does not take responsibility for the contraband. He will convict and sentence both inmates Lisle and Thurman to 4 months in segregation, "However" Thurman was never sent to segregation and by holding allegation that black prisoner was placed in solitary while a white prisoner who engaged in the same conduct was not. States an equal protection claim. All inmates in Menard are mostly African-Americans who caught the same disciplinary changes as Lisle who has a cellmate both inmates are issued a disciplinary report and at the adjustment committee if both cellmates plead not guilty both inmates are found guilty or not guilty in their disciplinary hearing. Lisle plead not guilty and do to Thurman being white he was not found guilty where the contraband was found in his box review all menard disciplinary reports all african-americans who plead not guilty are both convicted and sent to segregation or released from segregation. By Thurman being white and not found guilty and sent to segregation like Lisle who plead not guilty was discrimination and the indifference. Lisle received his Summary from the adjustment committe and it stated no "witness" requested which walse false and denied Lisle due process where its a clear fact Lisle requested a witness who is L.T. Sammuel and by L.T. Brookman being aware and knowing that Lisle requested a witness and "Concealing" the adjustment committe summary report to state Lisle requested

No "witness" denied Lisle his due process right. Lisle was then housed on 8th gallery in the north II Segregation unit and housed with inmate (Jason Holmes #B58988) who also had the same disciplinary report as Lisle inmate Holmes who is africanamerican plead not guilty to his disciplinary changes and his cellmate he was housed with in the North #1 unit was also issued a disciplinary report and plead not guilty and both inmates was found guilty. See Exhibit 17 This again shows the indifference in african american inmates who plead not guilty to the same disciplinary report were found guilty and in Lisle case he plead not guilty and was convicted and sentenced to segregation and his cellmate Thurman was not convicted or sentence to segregation do to him being white is clearly discrimination and indifference in the treatment of african american inmates which violates equal protection which protects Lisle from discrimination. Do to Lisle being denied his due process and equal protection rights caused aggravated conditions that were atypical and significant caused Lisle to have a mental break down where he was sentenced to 4 months segregation and 6 months contact visit denial and other general prison privledges like phone calls etc. Lisle filed a grievance about his disciplinary report and proceedings. Menard institution "refused" to answer Lisle grievances Lisle continued to complain and file grievances. Lisle then recieved a grievance that he filed through the institution mail from (Warden Kimberly Butler) which stated Lisle has to resummit his grievance do to his grievance not being an "emergency grievance. In which

Lisle did not sign an x to turn his grievance in as an
emergency. By Warden Butler forging an x on Lisle grievance
denied his equal protection and due process. This made Warden
Butler liable to violate Lisle due process where Butler knew
by forging an x on Lisle grievance would stop his grievance
process. See Exhibit 1 and 2 Lisle will request a pen expert
to conduct a test which will show that the forged x on his
grievances is Warden Butler signature where the x is signed
is the same ink from Butler pen. Lisle then wrote Lisa Madigan
and filed a complaint about menard institution "destroying" Lisle
grievances. Lisle then sent the grievance to spring field and advised
the administration review board that warden Butler forged an x on my
grievance and that its impossible for Lisle to exhaust his
institution grievance remedies where menard institution is destroying
and forging inmate grievances Lisle also advised the administrative
review board that he resubmitted the grievance again that warden
Butler forged as well sent the actual grievance that warden
Butler forged to have copies made and used as evidence. After
Lisle made the administrative review board aware of menard
institution denying him his constitutional right and by T.S. keen
not "contacting" menard institution as well advising menard
institution of Lisle complaint and to properly address his
grievances made T. S keen liable in conspiracy to aid menard
institution to continue to denie Lisle due process through
his grievance process where T. S keen stated in her response
to Lisle complaint about menard institution forging and

destroying his grievance" To follow grievance process. ~~Lisle~~
By Lisle informing T.s.keen he is trying to follow the
grievance process but menard institution is denying him his
process to grievance procedure and by T.s.keen not contacting
Warden Butler or menard institution informing them that
Lisle states he trying to follow his grievance process but he
states menard institution is denying him that right is a "Conspired"
act to let menard institution continue to denie Lisle due process
right to follow the grievance process. By T.s keen "overseeing" the
grievance process conducted at menard institution and not taking
action or informing menard institution of Lisle complaint
makes her a conspiring party to also denie Lisle his due
process and equal protection of Laws See Exhibit 2. The denial
of all due process and equal protection claims Lisle has stated
caused him to have a mental breakdown which forced him
to try to kill his self. Lisle also advised the administrative
review board that he was going to try to kill his self See
Exhibit 2 By T.s.keen not "alerting" any one or menard
institution of Lisle suicide attempt made her liable to
Lisle pain, suffering and risk of death constituted "irreparable"
harm. On 9-3-14 3rd shift medical assistance (Jordin) conducted
her medical rounds on 8gallery in the North II segregation
unit with (L.T. Willborne) who at this time was the 3rd
shift night Sgt. who walk up on inmate Lisle cell and witness
him trying to commit suicide where Lisle was hanging from
shoe strings made into a rope as he was hanging from

the jail house made rope it caused his hands to hang out his cell from strangulation. At this time nurse Jordin stop infront of Lisle cell and told him to put his hands back in the bars in which a suicide note was in Lisle hands after the jail house made rope snaped Lisle fail to the floor Lisle advise her to take his suicide note Jordin and Wilborne walk off with out getting Lisle a Crisis team or medical help this went against Menard policy were it states any employee is to alert mentalhealth when it is plain that a inmate is In need of help See Exhibit 18. This made Jordin and Wilborne liable to violating Lisle Constitutional rights to medical Care which was Cruel and unusual punishment. Lisle suicide attempt was a serious medical need which even a lay person Could see Lisle had a serious medical need. By Wilborne and Jordin failure to recognize legitimate threats of "suicide" and refusing and failing to get Lisle medical help when requested is the deliberate indifference to risk that Lisle would attempt suicide. On-9-4-14 Lisle gave 2nd shift medical assistance (Horman) a suicide note (officer McClure) was also present and heard Lisle state to medical nurse Horman that he is suicidal and he is fent to kill his self Lisle then took a jail house shoe string made into a rope and attempted for the 2nd time to kill his self. Hordian and McClure walked off. The jail house rope again snaped. This made Horman and McClure liable to violating Lisle Constitutional rights to medical care which was Cruel and Unusual punishment Lisle 2nd suicide attempt was a serious medical need which

even a lay person could see Lisle had a serious medical need By Horman and McClure failure to recognize legitimate threats of "Suicide" and refusing and failing to get Lisle medical help when requested is the deliberate indifference to risk that Lisle would attempt suicide. This also went against Menard policy to alert mental health when it is plain to see Lisle needed medical care which are all menard employees duty See Exhibit 18. By Lisle continuing to being denied a crisis team or medical help made him continue to hurt his self. On 9-5-14 Lisle gave a suicide note to his gallery officer (Officer Young) and informed him that he will attempt to kill his self again for the 3rd time. Young failed to get Lisle medical care or a Crisis team or alert mental health this violated menard policyes were all employees are to alert mental health when a inmate is in need See Exhibit 18. This made young Liable to violating Lisle Constitutional rights to medical care which was Cruel and Unusual punishment. Lisle notice of a suicide attempt was a serious medical need. By Young failure to recognize legitimate threats of "Suicide" and refusing and failing to get Lisle medical help when requested is the deliberate indifference to risk that Lisle would attempt suicide. Later that night on 9-5-14 Lisle carried out his plot to commit suicide. During 2nd shift medical assistance (Jan Doe) conducted her medical rounds and found Lisle hanging from a Jailhouse made rope with his hands behind his back tied up with shoe strings so that he couldnt stop his self from committing suicide. This Jan Doe Screamed for help and began to try to snatch the Jail house rope off Lisle neck at this time Lisle cellmate (Jason Holman #B38488)

woke up out his sleep to find his cellmate Lisle hanging from a Jail house rope and after Jan Doe informed inmate Holman to grab Lisle feet and hold him up to keep Lisle from Strangling his self Holman held up Lisle feet See Exhibit 19 Jan Doe keep pulling the Jail house rope off Lisle neck which caused Lisle neck to have more problems breathing and "pain" which caused the rope alteccerations to dig deeper and more "pain" at this time Lisle was took to the North I I Segregation which medical assistance observed Lisle and (John Doe) requested that Lisle go to Menard healthcare unit for further observations by (Doctor) because of Lisle breathing eyes rolling and damage from the Jai house rope. As Lisle arrived at the menard health care do to no "Certified" Doctor being available Lisle was seen by a medical assistance who is not a Certified Doctor (Jana South) Who was abussive to Lisle and stated to Lisle you suck you tryed three times to kill yourself you should have killed your self the right way the first time. This continued for the next couple of days Lisle was targeted and "taunted" by Jana south. Next Jana South began to read my medical file out loud to a 3rd shift night sgt. (John Doe) which violated my privacy to medical care Lisle was target by nurse Jana South hold turnt up the air conditioner to freeze Lisle which caused him to get blisters on his feet. (Menard employees) strip Lisle Naket and gave him Just a small blanket and Lisk was force to Sleep on cold Steel with out any proper beding mattress do to this it caused Lisle body to get "painful" blisters which caused Pain

This violated Lisle constitutional rights and was cruel and unusual punishment do to the way Lisle was keep on suicide watch it should be choted that Menard correctional center has change its policy and now gives suicide watch inmates a blanket and suicide Jacket and suicide bedding mattress. But at the time Lisle was on suicide watch he was not giving the extra Jacket and bedding which shows Lisle was mistreated And cold tempture and no proper clothing or bedding caused him pain and suffering and blisters which in Juried his body. See Exhibit 8 This made Jana South and Menard employees liable to violating Lisle constitutional rights which were Cruel and unusual punishment and the indifference was Jana South conduct toward Lisle and Menard employees failure to provide Lisle adequate medical care to bedding and clothing on suicide watch which Menard employees now provide inmates adequate bedding and clothing while on suicide watch is the difference that Lisle was not provided while on suicide watch. Lisle was never reviewed by any Certified medical Doctor for his injuries which Menard employees and Medical unit was liable for not providing Lisle to be seen by a Certified Doctors for his injuries which inmate Holman witness. Lisle bruise on his body and poor health see Exhibit 19 also See Exhibit 10 were Lisle informed Menard employees that (Sgt. Willis) mental health (MS. Thompson) and Counselor (Tonya knust) saw the damage of Lisk body from the Jail house rope. Lisle denial of medical care was cruel and unusual punishment which denied his Constitutional rights This made menard employess and healthcare liable for failure to provide Lisle medical attention by a Doctor where

14

his injuries were a serious medical need. the indifference is
Lisle was denied proper medical attention and to be reviewed
by a train Certified Doctor who could properly review Lisle injuries
Do to Lisle not being reviewed Lisle continued to suffer and have
Pain were his breathing was bad and his eye focusing was bad
damage to his neck which caused pain and Lisle has since lost
afew of his memories. See Exhibit 10. Lisle clearly informed
Menard employees Lisle still hasnt recieved any medical attention.
Lisle further states do to his injuries from his suicide attempt
Caused him to have Continued suicide attempts and psychological
damage which caused him to catch a series of disciplinary reports
do to his mental state after being abused and denied medical
attention in his first 3 suicide attempts review Lisle I.D.O.C. history
it will show that Lisle has never had any suicide attempts while
incarcerated at menard correctional center or numerous disciplinary reports
untill his first 3 suicide attempts which started 9-3-9-4-9-5 IS
Lisle was being tartgeted and retilated against for filing grievences
Where (Susan Hill) approved inmate Holman who was Lisle old
Cellmate for approval of audio Teluision privilkges See Exhibit 20
Where SussnHill denied Lisle his audoTeluision privileges were
Lisle and Holman came to the segregation unit the same day for
the same disciplinary charges. See Exhibit 20 and 21
Menard has a history of violating inmates dueprocess at their
disciplinary hearings See Exhibit 22 from inmate
(Tiquin Clay R2770 3) affidavit and denial of due process by menard
employees. CharletteMidget was laible for failing to provide Lisle medical care.

Lisle continued to file grievances and request menard
employees to review his grievances See Exhibit 23
Lisle again wrote to springfiled Administration Reviewboard
advising them to answer to Lisle 8-12-14 Discrimination
disciplinary report which by grievance rules was to be addressed
within six months the administration Review board failed
to respond to Lisle grievances in 6 months after Lisle again
advise them to review grievance therefore after failing to
review Lisle grievance within 6 months and after Lisle
wrote springfield advising them after 6months to review the grievance
the administration reviewboard has waived all rights to
respond to Lisle grievance and is procedural barred so the
defendants is barred to argue about Lisle 8-12-14 Discrimination
grievance. See Exhibit 24 Lisle affidavit. It should be noted
Lisle suffers from a severe mental illness and he is currently taking
Pyschtropic drugs. Spiller and Ramon conspired together to frame Lisle
for his 8-12-14 Disciplinary ticket by falsefying Lisle had 7.4 Alchol
in his disciplinary report and ramon writing Lisle disciplinary report were
contraband was found in Thurman box This made spiller and Ramon Liable L.T Sammuel
was liable for failing to inform the adjustment committee that Inmate Thurman
Confessed to having contraband and not informing the warden that his fellow employees
called Lisle a Coon a racis i+ name do to the color of his skin all defendants name
mentioned were liable for violating Lisle constitutional rights see all arguments (1-24)
And Administration Review board was liable for failing to inform menard about Lisle
Suicide attempts and violation of his administration remedies. And menard grievance officer
was liable for failing to properly address Lisle grievances and conspired with warden to delay Lisle grievaunce process

16

Lisle was under aTypical and significant hardship where he served over 120 days in segregation lost phone privindges Contactvisit privindges Commassery lost and grade demotion for his disciplinary proceedings which was due to his dueprocess being violated do to his witness not being called to adjiwtm hearing. EXHAUSTION OF LEGAL REMEDIES

60 Is there a prisoner grievance procedure in the institution ☑ YES IF your answer is YES, what steps did you take?

A० Plaintiff wrote "numerous" grievances to Menard Correctional Counselor Susan Hill, he never recieved a response From his grievance which allege a (Discrimination) (Staff Conduct) (Disciplincry Report) also he allege other Dueprocess violation complicnts. Steaming From his 8-12-14 Drsciplinary Report.

B० Plaintiff then forward the same grievance complaint above steaming from his 8-12-14 Disciplincry Report to the grievance officer at menard Correctional Center.

C० On 8-28-14 plaintiff grievance he filed to both parties stated above was returned to him through the menard institution mail where the Warden Kimberly Butler stated his grievance steaming from his 8-12-14 Disciplincry Report was being denied do to No: an emergency is not substantiated offender should submit this grievances in the normal manner. See Exhibit 1

D० On 9-3-14 plaintiff filed the grievances stated above which Warden Butler denied as (No:Emergency) to the Administrative Review Board of inmate issues filing a complaint that Warden Butler forge his grievance by marking a (X) on his grievance as non emergeng to stop him from filling his grievance steaming from the 8-12-14 Disciplinary Report See Exhibit 2

1-7

E. On 9-3-14 plaintiff re-wrote and resubmitted a grievance re-alleging all complaints mentioned above steaming from his 8-12-14 Disciplinary Report to the grievance officer also see Exhibit 2 where plaintiff made the Administrative Review Board aware that he re-summited his grievance properly.

F. Plaintiff also wrote States Attorney Lisa Madigan advising her that Menard Correctional Employees were trying to prevent him from summitting his grievances.

G. Plaintiff again sent Kimberly Butler a notice to respond to his grievance steaming from 8-12-14 Disciplinary Report See Exhibit 3

H. Menard grievance officer finally responded to plaintiff 8-12-14 Disciplinary Report Discrimination grievance

I. In the year of 2014 plaintiff appealed the grievance stated above Steaming from his 8-12-14 disciplinary report to the Administrative Review Board of inmate issues

J. According to I.D.O.C. Rules of Grievance Procedure the Administrative Review Board of inmate issues failed to respond address or answer within 6 months to plaintiff grievance that he appealed Steaming from the grievance officer "response of Menard Correctional Center steaming from his 6-12-14 Disciplinary Report Discrimination violation grievance See Exhibit 4-5 I.D.O.C.

18

Grievance Procedure.

Ko Plaintiff Therefore states that the Defendant(s) have waived their right to address plaintiff grievance and therefore any response in this 1983 civil suit is to be considered procedural barred

Lo Following the Complaint plaintiff filed and notified the adminstrative Review Board asserting that Warden Butler forge his grievance in a Conspiracy with Menard Correctional Employees to conceal the discrimination violation. By plaintiff being a Mental health patient with a mental disability it caused psychological effect and mental infliction of pain that caused plaintiff to try to Commit Suicide See Exhibit 2

Mo On 9-5-14 and 9-12-14 plaintiff filed two seperate grievances asserting denial of medical treatment and staff conduct

No Menard Correctional Center continued to avoid plaintiff 9-5-14 and 9-12-14 grievance complaints which forced him to continue to advise Menard Correctional Center to address both grievance he also contacted Freedom of Information requesting grievance Log of the year 2014 of all filed grievances by plaintiff he was only sent the August Log by the Freedom of Information See Exhibit 6-7

Oo On 9-22-14 Counselor Brad Bramlet answered both of plaintiff

grievances filed on 9-5-14 and 9-12-14 Medical treatment and Staff conduct attaching one response from a Charlotte Miget, RN answering both 9-5-14 and 9-12-14 medical treatment and staff conduct

P. On 11-7-14 plaintiff appealed both grievances from 9-5-14 and 9-12-14 response of Charlotte Miget RN. reply to the Menard Correctional grievance officer also revealing witnesses to support plaintiff grievance. See Exhibit 10

Q Menard grievance officer conspired with Menard Correctional center employees to prevent plaintiff from appealing his grievance by only replying to plaintiff 9-5-14 grievance and refusing to also address plaintiff 9-12-14 grievance

R. Charlotte Miget Rn replied with one response to plaintiff 9-5-14 and 9-12-14 grievances which he appealed to the grievance officer. See Counselor Bramelt reply. Exhibit 8-9

S. Plaintiff the appealed the complaints stated above on 12-10-14 to the Administrative review board of inmate issues showing that menard grievance system tryed to prevent him from having his 9-12-14 grievance addressed which was addressed by Counselor Bramlet and Charlotte Miget RN on one response See Exhibits 11-12

T. On 1-14-15 T.s Keen of the administrative review board answered plaintiff 9-12-14 grievance stating send a response See Exhibit 13

U. However plaintiff sent the administrative review board a copy of Charlotte Miget RN one response to his 9-5-14 and 9-12-14 grievan explaining that menard grievance officer refused to address his 9-12-14 grievance.

V. Administrative Review Board only answered plaintiff 9-5-14 grievance stating it was "untimely" summitted.

W. Plaintiff again informed the administrative review board he seeks to appeal his 9-5-14 grievance that was responded to as untimely Showing that it was timely do to him being on suicide watch and he had no access to any property or any way to know he had recieved a answer from his grievance and 30 days to appeal and once plaintiff got off suicide watch he was giving his property and responded to this grievance which made it timely See Exhibit 14

X. Administrative reviewboard responded by dening plaintiff grievance stating plaintiff grievance was apppperate addressed See Exhibit 14

Y. After "continuely" exhausting his grievance procedure and being prevented to properly exhaust his grievance plaintiff now files his 1983 suit

Z. Also See Exhibits 15-16 affidavits from other Menard prisoner who also filed

Complaints about menard grievance process. All parties mentioned became liable by violationg Lisle exhaustation remedie process.

7.
## LEGAL CLAIMS

Plaintiffs reallege and incorporate by reference paragraphs 1-7 The Racial Discrimination and Procedural due process violation punishment and Segregation and fawlure to provide witness and disciplinary offense and due process trying to prevent plaintiff from exhaustion of administrative remedies and denial of medical care and serious medical needs see allarguments (1-24) violated plaintiff (StevenDLisleJR) rights and constituted a Fourteenth amendment Due process and equal protection and procedard dueprocess any Eighth amendment violation Cruelandunusual punishment. The plaintiff has no plain. adequate or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of the defendants unless this court grants the Money Domages and any other relief which the court desires and plaintiff seeks.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this court enter Judgment granting plaintiff: A declaration that the acts and omissions described herein violated plaintiffs rights under the Constitution and laws of the united states.

Adward Compensatory damages in the following amounts. Against each defendunt, Jointly and severally

Willborne 30,000

Kimberly Butler 100,000

22

Charlette Midget RN   100,000
Adminstrative Review Board   100,000
C. McClure   30,000
Young   30,000
Jordin   75,000
Horman   75,000
John Doe   100,000
Jan Doe   100,000
Menard employees   150,000
Jana South   100,000
T. skeen   100,000
Adward Punitive damages in the following amounts against
each defendant, Jointly and Severally.

Kimberly Butler   100,000
Willborne   30,000
Kent Brookmsn   100,000
Dunbar   90,000
C. Mc Clure   30,000
Sammauel   50,000
Spiller   100,000
Ramon   75,000
Young   30,000
Susan Hill   60,000
Hoff   50,000
Jordin   75,000
Horman   75,000
Menard Employees   80,000

John Doe $75,000$

Jan Doe $75,000$

John Doe and Jane Doe

Jane South $100,000$

T. Skeen $100,000$

Administrative Review Board $100,000$

Charlette Midget $100,000$

A Jury trial on all issues triable by Jury

Plaintiffs cost in this suit

Any additional relief this court deems Just proper, and equitable

Dated 9-3-15 Steven D Lislye

         Pontiac Correctional Center

         PO Box 99

         Pontiac IL 61764

         VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief and as to those I believe them to be true, I certify under penalty of Perjury that the foregoing is true and correct.

    Executed at Pontiac Illinois on date 9-3-15

    STEVEN DLISLE J # R40159

# EXHIBITS

1. Grievance and Response
2. Grievance and letter to springfield
3. Reciept Notice sereved to werden
4. Menard Rules procedures
5. Menard Rules procedures
6. Grievance Log
7. grievance Log
8. Grievance and response
9. grievance and response
10. grievance and complaint to Grievanceofficer
11. Appeal to Administrative reviewboard
12. Appeal to Administrative review board
13. response from Ts keen
14. response from Ts keen
15. Affidauit (sharp)
16. Affidauit (McFadden)
17. Disciplinary report (Holman)
18. menard Rules procedures
19. affidauit (Holman)
20. audio visual Slipt (Holman)
21. aadiovisual slipt (Lisle)
22. affidauit (Clay)
23. Reciept Notice served to warden
24. affidauit (Lisle)
25. Response from (Lawyer)



ILLINOIS DEPARTMENT OF CORRECTIONS

**Administrative Review Board**
Return of Grievance or Correspondence

*N2-8-07*

Offender: __LISLE__         __STEVEN__         __D.__   __R40159__
            Last Name         First Name           MI        ID#

Facility: __MENARD__

☒ Grievance: Facility Grievance # (if applicable) _____ Dated: _8/26/14_ or ☐ Correspondence: Dated: _____
Received: _9/8/2014_ Regarding: _IDR 8/2/2014 — MEW_
          Date

The attached grievance or correspondence is being returned for the following reasons:

**Additional information required:**

☐ Provide a copy of your written Offender's Grievance, DOC 0046, including the counselor's response, if applicable.

☒ Provide a copy of the Response to Offender's Grievance, DOC 0047, including the Grievance Officer's and Chief Administrative Officer's response, to appeal.

☐ Provide dates of disciplinary reports and facility where incidents occurred.

☐ Unable to determine nature of grievance or correspondence; submit additional specific information. Please return the attached grievance or correspondence with the additional information requested to:   Administrative Review Board
                                                                                     Office of Inmate Issues
                                                                                     1301 Concordia Court
                                                                                     Springfield, IL   62794-9277

**Misdirected:**

☐ Contact your correctional counselor regarding this issue.

☐ Request restoration of Statutory Sentence Credits to Adjustment Committee. If the request is denied by the facility, utilize the offender grievance process outlined in Department Rule 504 for further consideration.

☐ Contact the Record Office with your request or to provide additional information.

☐ Personal property issues are to be reviewed at your current facility prior to review by the Administrative Review Board.

☐ Address concerns to:  Illinois Prisoner Review Board
                        319 E. Madison St., Suite A
                        Springfield, IL   62706

**No further redress:**

☐ Award of Supplemental Sentence Credits are discretionary administrative decisions; therefore, this issue will not be addressed further.

☐ Not submitted in the timeframe outlined in Department Rule 504; therefore, this issue will not be addressed further.

☐ This office previously addressed this issue on _____.
                                                    Date

☐ No justification provided for additional consideration.

**Other** (specify): _NEED TO FOLLOW GRIEVANCE PROCESS._
_____

Completed by: _____T. S. Keen_____        _T Scott Keen_      _10, 28, 2014_
                    Print Name                  Signature            Date

Distribution:  Offender            *Printed on Recycled Paper*        DOC 0070 (Rev.4/2013)
               Inmate Issues

Evidence    9int 703pinsficld
on 9-13-14  ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE**                                    N2-8-/8

| | | | ID#: R40159 |
|---|---|---|---|
| Date: 8-26+14 | Offender: (Please Print) | Steven D Lisle JR | |
| Present Facility: Menard | | Facility where grievance issue occurred: menard | |

**NATURE OF GRIEVANCE:**

☐ Personal Property      ☐ Mail Handling       ☐ Restoration of Good Time    ☐ ADA Disability Accommodation
☑ Staff Conduct          ☐ Dietary             ☐ Medical Treatment           ☐ HIPAA
☐ Transfer Denial by Facility  ☐ Transfer Denial by Transfer Coordinator   ☑ Other (specify): Discriminattor

☑ Disciplinary Report: 8 / 12 / 14        menard
                       Date of Report        Facility where issued

Note:    Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
    Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
    Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
    Chief Administrative Officer, only if EMERGENCY grievance.
    Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary
    administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief
    Administrative Officer.

Summary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information
for each person involved):

Menard C.C has undergone a History of Racial incidents
this Institution Just started Back to put Black and
White inmates back in the Same Cell as cell Mates
Lisle who is a Black inmate was housed in Cell 6-25
east House with inmate Brian Thurman M37116 who is
a White inmate. On 8-12-14 Thurman upon returning
from Rec "Refused" housing Which IDOC issues
Disciplinary Tickets for this. On this day Lisle and
Thurman Cell 6-25 was searched and A Bag

Relief Requested: 140,000$ Dollars for damages or released from
509 disciplinary ticket drop from Record and a Job in the
Hospital or R&C or Jainter at school building or general Property for   3y

☑ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

Steven D Lisle          R40159        8, 26, -14
   Offender's Signature      ID#            Date

(Continue on reverse side if necessary)

| **Counselor's Response (If applicable)** |
|---|
| Date Received: ___/___/___   ☐ Send directly to Grievance Officer   ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277 |
| Response: |

Print Counselor's Name          Counselor's Signature          Date of Response

RECEIVED
AUG 28 2014
GRIEVANCE OFFICE
MENARD CORRECTIONAL CENT

| **EMERGENCY REVIEW** |
|---|
| Date Received: 8, 27, 14   Is this determined to be of an emergency nature?   E63   ☐ Yes; expedite emergency grievance. ☑ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner. |

K Bittles    RECEIVED
Chief Administrative Officer's Signature    SEP 3  2014   Date: 8, 28, 14

[VHT --- (17 - A BLASTVTE/D) -A/ -X/ @]

Liquid Substance with fruit was found inside
Inmate Thurman M3711b Legal storage Box. How
ever inmate Lisle was issued a ticket without
inmate Thurman Being included as Lisle cell mate
and Thurman Storage Box was where the liquid substance
was found. Lisle was walk to seg. Do to the
fact inmate Thurman is a white male he was not
walk to seg and do to Lisle being a black inmate
he was issued a ticket for Thurman conduct. Thurman
also "Refused" housing and told LT Sammuel
that the liquid substance was his and not Lisle
Thurman was returned back to cell 6-25 as if
Nothing never happened. Upon inmate Lisle leaving
the cell house he over heard a group of officers talking
and laughing as one officer stated get this "coon"
refering to inmate Lisle out of the cell house and return
this "Whole Some" white men back to Bell 6-25.
This Iteury was preludice and violated Lisle
    Fourteenth Amendment of the U.S. Constitution of
the Federal Law which this racial discrimination
and racial profiling violated Lisle equal protection
rights not to be treated "unfairly" or discriminated
against do to the Color of h's skin Lisle was
not treated as every other inmate who celly is also
wrote a discipknary report as his cellmate if one cell
mate is walk to seg for the same incident both
cellmates are walk to seg Thurman refused housing
and was not wrote a discipknary report for refusing
housing This clearly shows indifference. the way
Lisle was treated by being walk to seg and convicted
for the disciplinary ticket that was wrote on 8-12-14
The statement that Lisle a coon and walk him to
seg and take that "whole some" whiteman back to cell 6-25
is clearly "preludice" and violates Lisle equal protection
rights and the way this whole process was presented
    show's clear bias and discrimination.
    Just to be clear inmate mike who resided
in cell 6-23 refused housing and he was
walk to seg a whitemale so to show that
inmates who refuse housing is wrote a ticket
and transfered to seg who ever inmate mike
celly was also "white" But By Lisle Being
Black when his cell mate refused housing Lisle
            was walk to seg

9-3-14 Grievance officer

I recieved this grievance back from the
warden and it is stamp 8-28-2014
> NO an emergency is not substantiated
> Offender should submit this grievance
> in the normal maner

Please keep this grievance as evidence
For a Fact I did not write emergecy
or put an ☒ on the emergcy box
So in a Future Civilrights 1983 lawsuit
I will call a pen expert to testify
that the x on the box mark is from
a different pen as a fact the
Same ink that the warden used
to sign off on which shows
her involvement in the conspiarcy
to inflict psycholigical and mental harm
to me I will like this grievance
Process and review by your office
do to the Fact on 9-3-14 I will try to kill
my self because the warden has again lied
signthe box with an X trying to make me
resubmit my grievance and I also resubmited
my grievance to day 9-3-14 on the institution
male also Im send this grievance to springfield
So in my death my family can sue the warden and
all responsible, this is damaging me mentally and psyvlically

RECEIVED
SEP 8 2014
Office Of Inmate Issues

EXHIBIT
(2)

So I sent the grievance

I wrote on 8-26-14
   to springfield on 9-3-14

and Today on 9-3-14
I resubmited the grievance
and re wrot what I wrote
in the grievance on- 8-26-14
to make sure I am following
all procedures

Exhibit 3

# INMATE SERVICES OFFICER

**NAME:** Steven D Lisle, JR # R40159

**DATE:** 10-26-14

**CELL #** NH2 8-07

Original is white Form
Copy is yellow Form

**CHARGE:** Drugs Paraphernalia, 203-202 misuse Property - 308 contraband

**REQUEST:** "NOTICE" To WARDEN BUTLER TO RESPOND IN 24 hours 1st Full Buisness day to INmate Lisle Grievance relating to Disciplenry Ticket From 8-12-14 and "Racial Discrimination" Property - Original grievance was sent to Lisle to be resubmitted. Do to reason of grievance being requested to be resumitted Lisle sent grievance to Springfield as evidence. And Lisle rewrote grievance and resumitted to This institution. This institution he's refused to address grievance. Lisle sent a copy to Attorney General. Therefore Lisle request this institution respond in 24 hours or Lisle will take this as a refused And Forward grievance to Springfield to exhaust remedies.

**SIGNATURE** Steven D Lisle jr

**RESPONSE:** _____

_____

_____

_____

_____

_____

_____

**SIGNATURE** _____

E.   Restrictions on recreational opportunities shall be documented, including the type, length, and reason for the restriction. A copy of the documentation shall be maintained by the facility, a copy shall be placed in the committed person's master record file, and a copy shall be given to the committed person.

F.   Committed persons whose recreational opportunities have been restricted or limited may grieve the determination in accordance with 20 Ill. Adm. Code 504, Subpart F.

G.   Recreational opportunities shall not be required during institutional lockdowns or during institutional emergencies, including, but not limited to, riots, strikes, fires, work stoppages, power outages, and natural disasters.

## Grievance Procedures (DR 504F)

### Filing of Grievances:

A committed person shall first attempt to resolve incidents, problems or complaints other than complaints concerning disciplinary proceedings through his or her counselor. If a committed person is unable to resolve the complaint informally or if the complaint concerns a disciplinary proceeding, the individual may file a written grievance on a grievance form which shall be made available in all living units. A grievance shall be filed within sixty days after the discovery of the incident, occurrence, or problem which gives rise to the grievance. However, if a committed person can demonstrate that a grievance was not timely filed for good cause, the grievance shall be considered. The grievance procedure shall not be utilized for complaints regarding decisions, which are outside the authority of the Department such as parole decisions, clemency, or orders regarding length of sentence or decisions which have been rendered by the Director.

Grievances concerning the following shall be exempt from local grievance procedures. Such grievances must be sent directly to the Office of Inmate Issues (ARB); decisions by the Transfer Coordinators Office, protective custody placement, involuntary administration of psychotropic medications, disciplinary issues originating from a facility other than facility where offender is currently housed, and decisions regarding personal property issues that occurred at a facility other than where the inmate is currently housed.

Grievances involving issues other than those noted above shall be handled in accordance with local grievance procedures as follows:

Grievance form must be legibly completed on offenders grievance form. Staff assistance shall be available as requested by any offender who is unable to prepare his or her grievance without assistance.

Emergency grievances, those involving issues in which there is substantial risk of imminent personal injury or other serious or irreparable harm to self or others shall be signed, marked as emergency and submitted to the Chief Administrative Officer. If emergency is not substantiated, CAO will indicate such and return grievance to offender. Grievance may then be submitted by the offender, through the normal grievance process.

Grievances involving discipline at the present facility or issues that have not been resolved by the offenders counselor shall be forwarded to the grievance officer.

All other grievances shall be submitted to the offender's counselor.

All committed persons shall be entitled to file grievances regardless of their disciplinary status or classification.

### Appeals: ⟶ 27

A.   If, after receiving the response of the Chief Administrative Officer, the committed person still feels that the problem, complaint or grievance has not been resolved to his satisfaction, he may appeal in writing to the Director within 30 days after the date of the decision. Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached.

B.   The Director shall review the grievance and the responses of the Grievance Officer and Chief Administrative Officer and shall determine whether the grievance requires a hearing before the Administrative Review Board. If it is determined that the grievance is without merit or can be resolved without a hearing, the committed person shall be advised of this disposition, in writing.

C.   An Administrative Review Board shall be appointed by the Director. One member of the Board may be a citizen from the community. A Department member shall be designated as chairman.

D.   The Administrative Review Board shall meet as frequently as necessary and may schedule hearings on grievances. Hearings may be conducted in person or via video or telephonic conference. The Board may call witnesses or examine records at its discretion.

26


EXHIBIT U

5. The interview and any submissions of relevant material and information;

6. Institutional order; and

7. Other legitimate penological interests.

C. The Chief Administrative Officer shall review the record of each committed person in administrative detention every 90 days to determine whether continued placement is appropriate.

1. The committed person need not be interviewed during these reviews.

2. The Chief Administrative Officer shall document the decision in writing.

D. Living conditions in administrative detention shall meet, at minimum, the standards set forth in Section 504.620. Telephone privileges shall be afforded in accordance with 20 Ill. Adm. Code 525.150.

## Recreation for Persons in Segregation Status:

A. The Chief Administrative Officer shall determine the number of hours a week committed person in segregation status may recreate outside their cells. Unless restricted by the Chief Administrative Officer in accordance with this Section:

1. Committed persons in segregation status for less than 90 consecutive days shall be afforded the opportunity to recreate outside their cells for a minimum of one hour per week.

2. Committed persons who have been in segregation status for 90 consecutive days or more shall be afforded the opportunity to recreate outside their cells for a minimum of five hours per week.

B. Unless medically contraindicated, out of cell recreation may be temporarily restricted or suspended if the Chief Administrative Officer determines the activity to be a threat to the safety and security of the facility or any person. For example:

1. Committed persons who are in segregation status and who are also under investigation may have their recreational opportunities restricted during the pendency of the investigation for a period not to exceed 90 days.

2. Committed persons may have their recreation restricted or limited due to a medical or mental health condition as determined necessary by a health care professional.

3. Committed persons who have been witnesses in criminal cases against other offenders, who are informants, or who otherwise require precautions to ensure their protection may have their recreational opportunities restricted.

4. Committed persons who are classified as high escape risks may have their recreational opportunities restricted.

C. Committed persons who are found guilty under 20 Ill. Adm. Code 504, Subpart A of:

1. A violation of State or federal laws, or committing assault, dangerous contraband, dangerous disturbance, escape, sexual misconduct, arson, damage or misuse of property, or aiding or abetting, attempting, soliciting, or conspiring to commit any of those offenses while in segregation status may be:

   a. Restricted from recreational opportunities for up to 90 days for the first offense; and

   b. Restricted from recreational opportunities for up to 90 days or indefinitely placed on limited recreation or both for the second and subsequent offenses.

2. Any other major rule infraction which is yard related and which was committed while the committed person was in segregation status may be restricted for up to 90 days for the first offense and up to 90 days for each subsequent major offense.

3. A minor disciplinary offense which is yard related and which was committed while the committed person was in segregation status may be restricted for up to 15 days for the first offense and up to 30 days for each subsequent offense.

D. The period of restriction imposed under subsection C of this Section shall be served consecutive to the initial 90-day placement in segregation status and consecutive to any previously imposed recreational restrictions. This shall not limit the ability to restrict recreational opportunities for committed persons who have not served 90 consecutive days in segregation.

25

E.  The Administrative Review Board shall submit to the Director a written report of its findings and recommendations.

F.  The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The committed person shall be sent a copy of the Director's decision.

G.  In those instances where a committed person is appealing a grievance determined by the Chief Administrative Officer to be of an emergency nature, the Administrative Review Board shall expedite processing of the grievance.

## Rights & Privileges (DR 525)

### VISITING PROCEDURES AND RULES

It is the inmate's responsibility to submit a visiting list to his assigned Correctional Counselor. Once the visiting list is approved, the yellow copy will be returned to the inmate. It is then the inmate's responsibility to inform those individuals on his list that they are approved to visit. Any individual who appears on an inmates visiting list, who may be considered a victim of that inmate, may be denied approval to visit.

*All visitors are subject to search of their vehicle, physical search of their person, and are required to clear search with a metal detector or other contraband detection equipment. Illinois Law provides that it is a felony to attempt to bring into a correctional facility an item of contraband. Contraband includes tobacco, alcohol, cannabis, controlled substances, hypodermic syringes or needles, weapons, knives, explosives, guns (loaded or unloaded), hacksaw blades and key and lock picking devices. Anyone attempting to bring in contraband on facility grounds will be subject to prosecution.*

All visits are subject to monitoring and video recording unless prior approval is given for confidential attorney or other privileged visits.

### OFFENDER VISITATION:

Prospective visitors who have been convicted of a felony, have criminal charges pending, or are currently on parole or probation may visit only with prior written approval of the Warden. Previously incarcerated offenders that have been denied a visit are not permitted to remain on State property.

Individuals 17 years of age or older must be on the approved list in order to visit. Visitors 16 years of age and below need not be on the approved list to visit; however, such visits are permitted only when accompanied by a parent or guardian who is an approved visitor or when prior notarized consent has been given by a parent or guardian who is in the free community for the child to visit accompanied by an approved visitor who is at least 17 years of age. Visitors may only visit once per day. Attorney and Chaplain visits are to be excluded from this limit.

Visitors who appear to be under the influence of drugs or alcohol are prohibited from visiting any offenders.

Visitors are required to fill out a Prospective Visitor Interview Form prior to visiting. All questions must be answered completely and truthfully. If it is determined that any information provided is false, visitor will be denied entry to the facility and are subject to permanent visitor restriction from all Illinois Department of Corrections facilities.

### VIDEO VISITS:

Video visits are available to General Population inmates. Inmate must have family contact Assistant Warden of Operations for information on video visits.

### REQUIRED IDENTIFICATION:

*All visitors 12 years of age and older (including legal visitors) are required to present 2 forms of identification. Forms of identification shall be a valid sealed photo I.D., such as driver's license, state I.D., military I.D., or acceptable documentation of non-US citizen including a current passport, Visa or Matricula, and documentation that includes a date of birth. Only visitors 12 years to 16 years of age will be permitted to use a current school picture I.D. as a form of identification. Appropriate staff shall do a name search on V.T.S. prior to an offender visit.*

### VISITOR'S REGISTRATION LOG:

Except for officials, all persons entering the facility shall sign in upon entry including name, time in, vehicle license number, home address, race, date of birth and the name and registration number of the offender receiving the visit. When departing the institution visitors will be required to log signature and time out.

EXHIBIT
5

## VISITING LIMITATION:

General Population Offenders- Contact/Non-Contact Visits:

Visiting Hours: Sunday through Friday: 8:00 a.m.- 3:30 p.m. Sign in time is from 8:00 a.m.- 2:00 p.m. Saturday: 8:00 a.m.- 5:30 p.m. Sign in time is from 8:00 a.m.- 4:00 p.m,. Visitors are normally allowed a two (2) hour visit, unless extenuating circumstances exist as designated by the C.A.O. or designee (Duty Warden).

Contact Visits: Offenders not under visit restriction are allowed five (5) visits per month. Three (3) adult visitors may visit simultaneously. This number includes children three (3) years and older. When more than six (6) visitors (three years or older) visit, it will be counted as two (2) visits.

Non-Contact Visits: Level "E" offenders are allowed five (5) visits per month.

NOTE: If a child is under the age of three (3) and can be held on an adult visitor's lap, they will not be counted as one of the three (3) visitors.

Segregation Offenders/Administrative Detention- Non-Contact Visits:

Visiting Hours: 8:00 a.m.- 2:00 p.m. daily. Sign in time is from 8:00 a.m.- 12:00 p.m. Visits are a maximum of one (1) hour.

Offenders not under visit restriction are allowed two (2) visits per month. Segregation offenders may only visit once per day. Two (2) adult visitors may visit simultaneously. This number includes children three (3) years and older. Each adult may accompany one (1) child less than three (3) years old. When more than four (4) visitors (three years or older) visit, it will be counted as two (2) visits.

NOTE: If a child is under the age of three (3) and can be held on an adult visitor's lap, they will not be counted as one of the two (2) visitors.

## MEDIUM SECURITY UNIT:

Visiting Hours: 8:00 a.m.- 6:30 p.m. daily. Sign in time is from 8:00 a.m.- 5:00 p.m. Visitors will not be processed for a visit during shift change (2:15 p.m.- 3:15 p.m.) Visits are normally allowed two (2) hour visits. Under normal circumstances and space availability, length of time may be extended. In no case will visits be allowed past the established visiting hours.
Offenders not under visit restriction are allowed five (5) visits per month. Three (3) adult visitors may visit simultaneously. This number includes children three (3) years or older. When more than six (6) visitors (three years or older) visit, it will be counted as two (2) visits.

NOTE: If the child is under the age of three (3) and can be held on an adult visitor's lap, they will not be counted as one of the three (3) visitors.

## GENERAL RULES:

*Visiting privileges may be suspended or restricted for security and safety requirements, space availability, disruptive conduct, abuse of visiting privileges, violation of Departmental Rules and state or federal laws by the offender and/or visitor.*

*Returning to the Electric Eye prior to the end of their visit may result in the termination of your visit.*

All children 16 years of age and under must be escorted and under direct supervision by a parent or guardian at all times.

Smoking is not permitted in any visiting room or waiting room. Visitors and offenders are not allowed to be in possession of tobacco items.

Visitors may rent lockers in order to lock their property. The cost of the locker is .50 cents (two quarters). The locker key is the responsibility of the visitor and is to be kept by the visitor until they have signed out. Upon signing out, the visitor should then secure the key inside of the lock.

Parking is permitted ONLY on the South Parking Lot designated for visitor parking. Handicapped Parking is available in the main Parking Lot. All vehicles must have the windows rolled up and the doors locked prior to departure.

Contact Visits: Visitors and Offenders are allowed to have a brief embrace upon entering and exiting the visiting room. Open mouth kissing is prohibited. Visitors and Offenders are required to sit in an upright position. this means feet flat on the floor and hands above the table. While seated at the table, the offender and visitor may hold hands above the table. Intentional contact to the breasts or genitals is prohibited. Any acts of sexual misconduct are not permitted and will result in the immediate

9/24/2014 3:16:23 PM

# Grievance Log
## August 2014

Exhibit 8

Total Grv: 171

| Grievance Number | Inmate's Name | Inmate's Number | Issue | Date Received | GO | Sent to CAO | Disposition | Sent to Inmate |
|---|---|---|---|---|---|---|---|---|
| 81-8-14 | | | 11f | 8-19-14 | | | | |
| 82-8-14 | | | 19a | 8-19-14 | | | | |
| 83-8-14 | | | 10c | 8-19-14 | | | | |
| 84-8-14 | | | 3a | 8-19-14 | | | | |
| 85-8-14 | | | 16a | 8-19-14 | | | | |
| 86-8-14 | | | 16b | 8-19-14 | | | | |
| 87-8-14 | Lisle | (x3)-idr 8-12-14 | 3a | 8-19-14 | | | | |
| 88-8-14 | | R401/59 | 10c | 8-19-14 | | | | |
| 89-8-14 | | | 11e | 8-20-14 | | 8-28-14 | Denied | 9-2-14 |
| 90-8-14 | | | 10a | 8-25-14 | | | | |
| 91-8-14 | | | 11f | 8-25-14 | | | | |
| 92-8-14 | | | 11c | 8-25-14 | | | | |
| 93-8-14 | | | 7d | 8-25-14 | | | | |
| 94-8-14 | | | 3a | 8-25-14 | | | | |
| 95-8-14 | | | 3a | 8-25-14 | | | | |
| 96-8-14 | | | 16c | 8-25-14 | | | | |
| 97-8-14 | | | 8d | 8-25-14 | | | | |
| 98-8-14 | | | 8d | 8-25-14 | | | | |
| 99-8-14 | | | 11f | 8-25-14 | | | | |
| 100-8-14 | | | 4a | 8-25-14 | | | | |
| 101-8-14 | | | 4a | 8-25-14 | | | | |
| 102-8-14 | | | 15b | 8-25-14 | | | | |
| 103-8-14 | | | 8c | 8-25-14 | | | | |
| 104-8-14 | | | 17b | 8-25-14 | | | | |
| 105-8-14 | | | 21 | 8-25-14 | | | | |
| 106-8-14 | | | 22 | 8-25-14 | | | | |
| 107-8-14 | | | 22 | 8-25-14 | | | | |
| 108-8-14 | | | 2f | 8-25-14 | | | | |
| 109-8-14 | | | 19b | 8-25-14 | | | | |
| 110-8-14 | | | 3a | 8-25-14 | | | | |
| 111-8-14 | | | 11a | 8-25-14 | | | | |
| 112-8-14 | | | 14a | 8-25-14 | | | | |
| 113-8-14 | | | 11e | 8-25-14 | | | | |
| 114-8-14 | | | 3a | 8-25-14 | | | | |
| 115-8-14 | | | 11f | 8-25-14 | | | | |
| 116-8-14 | | | 6b | 8-25-14 | | | | |
| 117-8-14 | | | 19e | 8-25-14 | | | | |
| 118-8-14 | | | 14c | 8-25-14 | | | | |
| 119-8-14 | | | 10a | 8-25-14 | | | | |
| 120-8-14 | | | 22 | 8-25-14 | | | | |

9/24/2014 3:17:51 PM

# Emergency Grievance Log
## August 2014

Total No. Grv: 71

| Grievance Number | Inmate's Name | Inmate's Number | Issue | Date Received | Date Sent To Warden | Disposition | Date Sent To Inmate |
|---|---|---|---|---|---|---|---|
| E-41 | | | 11e | 8-22-14 | 8-22-14 | EMERGENCY | 130-8-14 |
| E-42 | | | 11f | 8-22-14 | 8-22-14 | Non-Emergency | 8-26-14 |
| E-43 | | | 11b | 8-22-14 | 8-22-14 | EMERGENCY | 131-8-14 |
| E-44 | | | 19b | 8-22-14 | 8-22-14 | Non-Emergency | 8-26-14 |
| E-45 | | | 22 | 8-22-14 | 8-22-14 | Non-Emergency | 8-26-14 |
| E-46 | | | 5b | 8-22-14 | 8-22-14 | Non-Emergency | 8-26-14 |
| E-47 | | | 22 | 8-22-14 | 8-22-14 | EMERGENCY | 132-8-14 |
| E-48 | | | 22 | 8-22-14 | 8-22-14 | EMERGENCY | 133-8-14 |
| E-49 | | | 5c | 8-22-14 | 8-22-14 | Non-Emergency | 8-26-14 |
| E-50 | | | 22 | 8-22-14 | 8-22-14 | Non-Emergency | 8-26-14 |
| E-51 | | | 2b | 8-26-14 | 8-26-14 | Non-Emergency | 8-27-14 |
| E-52 | | | 22 | 8-26-14 | 8-26-14 | EMERGENCY | 146-8-14 |
| E-53 | | | 21 | 8-26-14 | 8-26-14 | Non-Emergency | 8-27-14 |
| E-54 | | | 15b | 8-26-14 | 8-26-14 | Non-Emergency | 8-27-14 |
| E-55 | | | 10c | 8-26-14 | 8-26-14 | Non-Emergency | 8-27-14 |
| E-56 | | | 22 | 8-26-14 | 8-26-14 | EMERGENCY | 148-8-14 |
| E-57 | | | 21 | 8-26-14 | 8-26-14 | EMERGENCY | 149-8-14 |
| E-58 | | | 8d | 8-27-14 | 8-28-14 | EMERGENCY | 160-8-14 |
| E-59 | | | 8d | 8-27-14 | 8-28-14 | EMERGENCY | 161-8-14 |
| E-60 | | | 7a | 8-27-14 | 8-28-14 | EMERGENCY | 162-8-14 |
| E-61 | | | 8c | 8-27-14 | 8-28-14 | Non-Emergency | 8-29-14 |
| E-62 | | | 22 | 8-28-14 | 8-28-14 | Non-Emergency | 8-29-14 |
| E-63 | | | 3a | 8-28-14 | 8-28-14 | Non-Emergency | 8-29-14 |
| E-64 | Lisle  idt 8-12-14 | R-01/59 | 11c | 8-28-14 | 8-28-14 | Non-Emergency | 8-29-14 |
| E-65 | | | 21 | 8-29-14 | 8-29-14 | Non-Emergency | 9-3-14 |
| E-66 | | | 22 | 8-29-14 | 8-29-14 | Non-Emergency | 9-3-14 |
| E-67 | | | 22 | 8-29-14 | 8-29-14 | Non-Emergency | 9-3-14 |
| E-68 | | | 11c | 8-29-14 | 8-29-14 | EMERGENCY | 1-9-14 |
| E-69 | | | 21 | 8-29-14 | 8-29-14 | Non-Emergency | 9-3-14 |
| E-70 | | | 22 | 8-29-14 | 8-29-14 | EMERGENCY | 2-9-14 |
| E-71 | | | 10a | 8-29-14 | 8-29-14 | Non-Emergency | 9-3-14 |

Exhibit 7

$N^{\underline{2}}$ 8-07

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE**

| Date: 9-12-14 | Offender: (Please Print) Steven DLisle JR | ID: R40159 |
|---|---|---|
| Present Facility: Menard | Facility where grievance issue occurred: Menard | |

**NATURE OF GRIEVANCE:**

☐ Personal Property ☐ Mail Handling ☐ Restoration of Good Time ☐ Disability
☑ Staff Conduct ☐ Dietary ☑ Medical Treatment ☐ HIPAA
☐ Transfer Denial by Facility ☐ Transfer Denial by Transfer Coordinator ☐ Other (specify):

☐ Disciplinary Report: ____/____/____
Date of Report                Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Brief Summary of Grievance:** ON 9-5-14 I was tooken to Healthcare Unit For medical observation after a "suicide" attempt. The 3rd shift Nurse came to do a medical check in which she began to "taunt" me by saying after three "suicide" attempts you suck you should have kill your self the right way the first time. This was stated in front of C/Os. C/os remained quiet and acted professional and did not engage in the Nurse verbal abuse. This continued for the next couple of days. This Nurse was so "impulsive" with she began to Read my personal medical Files with the Sgt on 3rd shift he can attest to this; if he's "honest" I watch the Nurse grab my file and over heard her discussing my personal medical and mental health history. This was wrong. From Saturday untill Sunday or about monday. The Nurse conducted illegal checks on me with.

**Relief Requested:** To be seen by Outside Hospital to conduct a Full examine, 60,000ᵈ in compensatory damage. Transfer to Stateville Farm or Menard Hill

☐ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

Steven DLisle Jr          R40159          9.12.14
Offender's Signature          ID#          Date

(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

Date Received: 9,22,14   ☐ Send directly to Grievance Officer   ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: See attached HCU response

Inmate Issues

DEC 1 0 2014

Brad Brinthe          ____          11.16.14
Print Counselor's Name          Counselor's Signature          Date of Response

---

**EMERGENCY REVIEW**

Date Received: ____/____/____   Is this determined to be of an emergency nature?   ☐ Yes; expedite emergency grievance
☐ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

_____          ____/____/____
Chief Administrative Officer's Signature          Date

Distribution: Master File; Offender          Exhibit 8          Page 1 Exhibit          Printed on Recycled Paper          DOC 0046 (Rev. 3/2005)

OFFENDER'S GRIEVANCE (Continued)

out the LT being present. So From saturday to around monday No
LT was around when Nurse made me stick my hands threw the chuck hole as
well conducted examines. I was scared and physiologically and mental distress cause
of the Nurse continue abuse toward me. I was strip Naket and giving dust
a blanket. and was forced on "suicide" watch in a Contiolled temprature Freezing
Cold cell every Night while at health care No bed to sleep on Force to
sleep on Cold steel bed post Do to cold steel and Room my feet have
develope "blisters" Do to my "suicide" attempt I was hanging in cell 8-18
N#2 by a shoe string and had my hands bond backwards so that I could not escape
at this time During the Nurse round on 2nd shift she observed me with c/o
the nurse saw me bond and hanging at this time she "hollered" for help
my cell mate (Holman B38488) woke up jump off bunk and held my feet
up after nurse advised him then the Nurse keep pulling the rope shoestring
off my neck untill it came off I believe that is what caused my throat
to hurt and made it to where I couldn't breathe the c/o took the rope shoe
string off my hands tird behind my back. Do to my breathing and induries
I was tooken to health care For medical observation and awaiting to see
Doctor for "inJuries" No Doctor every came to attend to my inJuries
I was kept in the hospital with out every seeing a "doctor" As of
right Now do to my 'suicide" attempt and from hanging. I have begun to
have trouble with my eyes focusing constantly nerve problem moving. I have
begun to lose (memories) from my past my throat has a gaging sound
when I breathe all the way like a hole in wind pipe some where I
continue to suffer every night from this. This was cruel and unusual punishment
it violated my U.S. const. 8th amend do to the Fact No medical doctor
examine me and I continue to suffer from induries No pictures
was tsken of the Strangle marks left around my Front and back neck
which was deep burnt red and brusing this pain I suffered over 6 week
feeling. Again No Doctor came to see me. And this I belive is "retelation"
and a cover up to hide that this institution was awsre of my 'suicide'
attempts and 3 times never tryed to stop me or get me help it took the
3rd time for 1 nurse to finally call for help. This abuse is Causing me
mental physical and physicaligal pain. And still No doctor neck
Constantly in pain.

Do to Health Care employees being employeed by Wexford Health
I hold them liable for their employees action and will
call them as a defendant or withiss. to state that in their
guidelines and healthcareunit who swore to medical oaths
in which the healthcareunit was out side the guidlines
of their oath and wexford health guidelines

Date 9-5-14                          Exhibit
                                       21

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**OFFENDER'S GRIEVANCE**

| Date: | Offender: (Please Print) Steven Lisle JR | IDOC#: R40159 |

Present Facility: Menard     Facility where grievance issue occurred: Menard

**NATURE OF GRIEVANCE:**

☐ Personal Property   ☐ Mail Handling   ☐ Restoration of Good Time   ☐ ADA Disability Accommodation
☑ Staff Conduct   ☐ Dietary   ☑ Medical Treatment   ☐ HIPAA
☐ Transfer Denial by Facility   ☐ Transfer Denial by Transfer Coordinator   ☑ Other (specify): _____

☑ Disciplinary Report: _____   Date of Report _____   Facility where issued Menard

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

Summary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

Menard C.C. has a history of racial profiling and racial
discrimination incidents! Menard C.C. *** ***
employees and medical staff witness me attempt to
comit suicide on 9-3-14 3rd shift when nurse
conducted her rounds and c/o nurse back up and told
Lisle put his arms in the door while he was hanging
from a rope from sloshing nurse said she dont take
letters which was a suicide note. On 9-4-14 lisle
gave 2nd shift nurse suicide notes and witness Lisle.

Relief Requested: 150,000 for physical damage mental and psychological
damage cruel and unusel punishment damage etc.

☑ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

Steven Lisle JR          R40159      9,5,14
Offender's Signature         ID#         Date

(Continue on reverse side if necessary)

**Counselor's Response (if applicable)**

Date Received: 9,22,14   ☐ Send directly to Grievance Officer   ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: See attached HCU Response

DEC, 02014

Brad Bramler _____   _____   11,6,14
Print Counselor's Name   Counselor's Signature   Date of Response

**EMERGENCY REVIEW**

Date Received: ___/___/___   Is this determined to be of an emergency nature?   ☐ Yes; expedite emergency grievance
☐ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

_____   _____
Chief Administrative Officer's Signature   Date

Distribution: Master File; Offender          Page 1          DOC 0046 (8/2012)
Printed on Recycled Paper

Exhibit                Exhibit (B)
9

attempt suicide and walk off with c/o
on 9-5-14 Lisle informed gallery officer
Young of attempts to finish committing suicide walk off.
On 2nd shift of 9-5-14 Lisle gave suicide letter
to c/o and informed him he will attempt to hang
his self again.

This is cruel and unusal punishment. It violates
the 8th U.S. Constiamend of federal law.
It also mocks and abuse the mental disability
which I have a mental disability.

The indifference is the hospital staff and
c/os have treated me different any
other inmate when they witnessing
attemp to harm myself and walk off
also by me having a known mental disability
this institution has pyscalogist and mental
abuse me cause I have a mental disability

No to Health care employees being comployeed by
Wexfordhealth I hold them liable for their
Employees action and will call them as
a defendant or witness to state that in
their guides lines and healthcare unit who
swore to medical oaths. In which the
Healthcare unit was out side the gaitrdelines
of their oath and wexford health guidlines

11-7-14   Exhibit
          (B) (8)         Sent to Law Library
                            for a copy

# GRIEVANCE OFFICER

1. Lisle appeals and does not agree with HCU Response

2. Do to all 3rd incidents from 9-3-14- 9-4-14 Lisle neck was bruised with Lecuture marks from hanging from shoe strings

3. Lisle did not see a doctor on 9-18-14 nor could a doctor state that I was saw for medical attention

4. Lisle only saw med techs Lisle never Saw a certified Doctor

5. Lisle has affidault from witness who witness damage to my neck area

6. Also Counselor and Clos also saw the bruising and damage on my neck

7. Counselor Knust- Clo sgt willis
   Crisis mental health Ms. Thompson
   Lisle is having medical problems from injurie
   Breathing- eye focusing- meomrie damage neck pain
   See Exhibit 10

Inmate Issues
DEC 1 0 2014

# APPEAL to Administrative Review Board

1. Lisle states that menard correctional center has violated his due process of the U.S.Const.Amend (14th 5th) by concealing evidence see Exhibit B

   Which shows lisle appealed both grievances dated 9-5-14 - 9-12-14 also on 11-7-14 sent exhibit B to grievance officer.

2. As you see the grievance officer reply grievance officer only responded to the 9-5-14 grievance.

3. Where the 9-5-14 and 9-12-14 grievance was attached together and responded to counselor Brad Bromlet response answewered by charlotte Miget, RN see Exhibit B

4. By the grievance officer only responding to 9-5-14 grievance and taking the 9-12-14 grievance out of appeal response and ❧ exhibit B shows my due process was vidated which is a violation of the Brady Rule

5. It also violates my US Const.Amend 8th (cruel & unusual) punishment by denie my health care neede ~~late issues~~ DEC 10 2014

6. My due process was also violated where on exhibit B appeal to grievance officer it showed Lisle witness who witness the damage to Lisle neck from hanging himself see witness mentalhealth Thompson Sgt willis Counselor knust all witness saw damage on Lisle neck

Relief Requested

1. A transfer to Stateville Correctional Center or Stateville Farm or Medium Correctional Center

2. Review by outside Medical Hospital and Review by outside mental Health

3. 160,000 total and Damages for mental and physiclogial damage

Steven D
Inmate Lisle JRR40159

Inmate Issues
DEC 1 0 2014

Exhibit 12

ILLINOIS DEPARTMENT OF CORRECTIONS

**Administrative Review Board
Return of Grievance or Correspondence**

N⁰-2-47

**Offender:** LISLE                    STEVEN                    R40159
          Last Name            First Name           MI        ID#

**Facility:** MENARD

☑ Grievance: Facility Grievance # (if applicable) _____ (2) Dated: 9/12/14 ___ or ☐ Correspondence: Dated: _____
Received: 12/10/14 Regarding: MEDICAL TREATMENT
        Date

The attached grievance or correspondence is being returned for the following reasons:

**Additional information required:**
☐ Provide a copy of your written Offender's Grievance, DOC 0046, including the counselor's response, if applicable.
☑ Provide a copy of the Response to Offender's Grievance, DOC 0047, including the Grievance Officer's and Chief Administrative Officer's response, to appeal. IF TIMELY
☐ Provide dates of disciplinary reports and facility where incidents occurred.
☐ Unable to determine nature of grievance or correspondence; submit additional specific information. Please return the attached grievance or correspondence with the additional information requested to:   Administrative Review Board
                                                                    Office of Inmate Issues
                                                                    1301 Concordia Court
                                                                    Springfield, IL   62794-9277

**Misdirected:**
☐ Contact your correctional counselor regarding this issue.
☐ Request restoration of Statutory Sentence Credits to Adjustment Committee. If the request is denied by the facility, utilize the offender grievance process outlined in Department Rule 504 for further consideration.
☐ Contact the Record Office with your request or to provide additional information.
☐ Personal property issues are to be reviewed at your current facility prior to review by the Administrative Review Board.
☐ Address concerns to: Illinois Prisoner Review Board
                      319 E. Madison St., Suite A
                      Springfield, IL 62706

**No further redress:**
☐ Award of Supplemental Sentence Credits are discretionary administrative decisions; therefore, this issue will not be addressed further.
☐ Not submitted in the timeframe outlined in Department Rule 504; therefore, this issue will not be addressed further.
☐ This office previously addressed this issue on _____.
                                              Date
☐ No justification provided for additional consideration.

**Other** (specify): Provide Grievance Officer's responses

**Completed by:** ___T. S. Keen___        _Scott Keen_        01, 14, 2015
                  Print Name                Signature            Date

Distribution:   Offender
              Inmate Issues

*Printed on Recycled Paper*        DOC 0070 (Rev.4/2013)

Exhibit 13



**Illinois**
Department of
**Corrections**

**BRUCE RAUNER**
Governor

**GLADYSE C. TAYLOR**
Acting Director

1301 Concordia Court / P.O. Box 19277 / Springfield IL 62794-9277 / Telephone: (217) 558-2200 / TDD: (800) 526-0844

Offender Name: _LISLE, STEVEN_                                    Date: _01|08|2015_

Register # _R40159_

Facility: _Menard_

This is in response to your grievance received on _12|10|2014_. This office has determined the issue will be addressed without a formal hearing. A review of the Grievance, Grievance Officer/CAO response to the grievance has been conducted. For a grievance that is direct review by the ARB, a review of the grievance has been conducted.

Your issue regarding: Grievance dated: _9|5|14_ Grievance Number: _89-11-14_ Griev Loc: _Menard_

- ○ Transfer denied by the Facility or Transfer Coordinator
- ○ Dietary _____
- ○ Personal Property _____
- ○ Mailroom/Publications _____
- ○ Assignment (job, cell) _____

- ○ Commissary _____
- ○ Trust Fund _____
- ○ Conditions (cell conditions, cleaning supplies)
- ○ Disciplinary Report dated _____
  Incident # _____
- ⦻ Other _Medical Treatment_

**Based on a review of all available information, this office has determined your grievance to be:**

- ○ Affirmed, Warden _____ is advised to provide a written response of corrective action to this office by _____

- ○ Denied, in accordance with DR504F, this is an administrative decision.

- ⦻ Denied, this office finds the issue was appropriately addressed by the facility Administration.

- ○ Denied in accordance with AD05.03.103A (Monetary Compensation for Inmate Assignments)

- ○ Denied, as the transfer denial by the facility/TCO on _____ was reviewed in accordance with transfer procedures and is an administrative decision.

- ○ In addition, property items are to be disposed of in accordance with DR501C.

- ○ Other: _____

- ○ Denied as the facility is following the procedures outlined in DR525.

- ○ Denied as Cell Assignment/Housing is consistent with the Department's determination of the appropriate Operational capacity of each facility.

- ○ Denied as procedures were followed in accordance with DR 420 for removal/denial of an offender from/for an assignment.

- ○ Denied as this office finds no violation of the offender's due process in accordance with DR504.80 and DR504.30. This office is reasonably satisfied the offender committed the offense cited in the report.

- ○ Denied as the security staff are following the established schedule for dispensing cleaning supplies to the offender when possible.

FOR THE BOARD: _Scott Keen_           CONCURRED: _Gladyse Taylor_ /TA
T. Scott Keen                                         Gladyse C. Taylor         7/14/15
Administrative Review Board                        Acting Director

CC: Warden, _Menard_ Correctional Center
_Lisle, S._, Register No. _R40159_

_Exhibit 14_

Exhibit
15

STATE OF ILLINOIS )
)  SS
COUNTY OF RANDOLPH )

## AFFIDAVIT

I, BRETT L. SHARP being first duly sworn upon
my oath depose and state that the following matters are both true and correct
made upon personal knowledge and belief, and if called as a witness, I am
competent to testify thereto: THAT INMATE GRIEVANCES
ARE INTENTIONALLY BEING DESTROYED BY THIS
DEPARMENTS STAFF IN ORDER TO COVER UP THE
CORRUPTION THAT OCCURES WITHIN THIS DEPARTMENT
EVERY DAY.
     THAT IN 2014 MENARD CORRECTIONS STAFF
IMPLICATED A NEW POLICY WITHIN THE INMATES
LAW LIBRARY THAT READS: INMATE GRIEVANCES
WILL NOT BE COPIED THAT HAVE NOT BEEN RECEIVED
BY A HIGHER LEVEL (I.E. COUNSELOR, GRIEVANCE
OFFICER OR OTHER.) AND IS CONSIDERED INCOMPLETE.
ONCE IT HAS BEEN SIGNED OR RESPONDED TO IN
SOME FORM BY SOMEONE OTHER THEN AN INMATE, IF
YOU NEED A COPY YOU CAN MAKE ONE YOURSELF ON
ANOTHER GRIEVANCE FORM.
     THAT COPIED GRIEVANCES ARE IN FACT DATED
IN THE LAW LIBRARY BY THE COPY MACHINE AND THER
FORE SHOW PROOF OF TIME FRAME, WITHOUT THIS
PROOF CORRECTIONS STAFF SIMPLY DESTROY INMATES
GRIEVANCES IN HOPE INMATES WILL DROP THE ISSUE,
IF IN FACT INMATES DO REFILE THE GRIEVANCE THEN
CORRECTIONS STAFF WILL DISMISS THE GRIEVANCE
STATING THAT I WAS NOT FILED IN THE PROPER
TIME FRAME.
     CORRECTIONS STAFF HAVE BEEN OVER HEARD SAYING
THAT NO GRIEVANCE IS TO LEAVE THIS CELL HOUSE,
NORTH TWO WITHOUT FIRST BEING OBSERVED BY THE
CELLHOUSE LIEUTENANT EOVALDI
     LIEUTENANT EOVALDI AND OTHER STAFF MEMBERS

Page 1 of 2

Exhibit @
15

Affidavit (continued) Page 2 of 2

ARE IN FACT RESPONSIBLE FOR NUMEROUS ASSAULTS
AND ALTERCATIONS AGAINST INMATES WITHIN THIS
CELLHOUSE

DECLARATION UNDER PENALTY OF PERJURY

Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/1-109 I declare
under penalty of perjury that I am a named party in the above action
that I have read the above documents and that the information contained
therein is true and correct to the best of my knowledge.

Subscribed and sworn to
before me on the ___ day
of _____, ___.

_____
NOTARY PUBLIC

DATED: 6·25·15

Respectfully submitted,

Brett L. Sharp
BRETT L. SHARP N38007
MENARD CORR
P.O. BOX 1000
MENARD, ILL 62259

STATE OF ILLINOIS )
) SS   Exhibit 6
COUNTY OF RANDOLF )

## AFFIDAVIT

I, ONAFFIA MCFADDEN #S-03239 being first duly sworn upon my oath depose and state that the following matters are both true and correct made upon personal knowledge and belief, and if called as a witness, I am competent to testify thereto: MY NAME IS ONAFFIA MCFADDEN, # S03239, I AM A INMATE OF ILLINOIS DEPARTMENT OF CORRECTIONS, AND IM CURRENTLY AM RESIDING AT MENARD CORRECTIONAL FACILITY. SINCE MY ARRIVAL IVE PER PERSONALLY WITNESS DELIBERATE CRUELNESS OF CORPORAL UNDUELY PUNISHMENT LUNCHED AGIANST MY SELF AND ALL INMATES ALIKE. THIS FACILITY AND ITS STAFF FROM THE CHIEF ADMINISTRATOR HERSEIF, KIMBERLY BUTLER, DOWN TO THE AVERAGE CORRECTIONAL OFFICER, HAS CONSTANTLY VIOLATED OUR CONSTITUTIONAL RIGHTS AND INSTITUTIONAL RIGHTS ACCORDING TO ILLINOIS DEPT. OF CORRECTIONS DEPT, RULES & STANDARDS. ONE OF THE MOST NOTORIOUS VIOLATIONS ARE OUR RIGHT TO DUE-PROCESS OF LAW When a written a Disciplinary Ticket AND FOUND GUILTY simply because of what the TICKET READS " Wolff V. McDonnell, 418 U.S. 539 "DUE PROCESS IS PROTECTION OF THE INDIVIDUAL AGIANST ARBITRARY ACTION OF GOVERNMENT" THE COMMITTE HERE AT MENARD HAS CONTINUOUSLY WITHHELD EXCULPATORY EVIDENCE FROM INMATES DISCIPLINARY HEARINGS, INCLUDING MYSELF. THE COMMITTE AISO AT TIMES DELIVER TO INMATES PLACED IN SEGREGATION A COBRRON COPY OF THEIR DISCIPLINARY TICKETS WITHOUT ALLOWING INMATES TO REVIEW, SIGN OR PRODUCE WITNESS ON THEIR BEHAIF. THIS IS A ONGOING TACTIC USED BY THE ADMINISTRATION HERE AT MENARD AND OTHER FACILITIES THROUGH IDOC. THIS ARBITRARY ACTION OF GOVERMENT IS A SERIOUS MATTER AND NEEDS TO BE MICRO-MANAGED. MANY OF INMATES HERE IN NORTH II CELL HOUSE

Page 1 of 2

Affidavit (continued) Page 2 of 2

ARE INNOCENT OF CHARGES. I was AM PLACED IN SEGREGATION
FOR (6 MONTHS) FOR A FALSE STG (SECURITY TREAT GROUP)
GANG ACTIVITY TICKET) BECAUSE I FILED A GRIEVANCE
AGIANT INTERNAL AFFAIRS OFFICER. HOF, WHO PLACED
ME UNDER INVESTIGATION FOR A "301 FIGHTING TICKET"
THAT I WAS MISIDENTIFIED FOR, I WAS THE ACTUAL
VICTIM, THE CULPRIT INMATE TORRES TOLD I.A OFFICER
HOF, THAT HE ATTACKED (ASSUALTED) ME WITH A
TRAY (WEAPON) AFTER WE EXCHANGED WORDS OVER
A SEAT IN THE CHOW HALL. YET, THOUGH OFFICER
HOF TOOK PICTURES OF MY INJURY, KNOWS IM NOT
AFFLIATED, NO OFFICER IS DOCUMENT AS A WITNESS
IN REGUARDS TO MY TICKET STATING "I WAS OBSERVED
IN AN ALTERCATION" AFTER SITTING WEEKS IN SEGREGATION
BEING DEPRIVED OF MY INSTITUTIONAL RIGHTS TO
COMMISSARY, PROPERTY, YARD AND MY (1) PHONE CALL
PER MONTH. I FILED A GRIEVANCE. THE INMATE
OF WHO TOLD I.A OFFICER HOF HOW HE ASSUALTED
ME WAS RELEASED, I WASNT GIVEN NO MEDICAL
ASSESTMENT OR NOTHING, BUT DUE TO ME FILING A
GRIEVANCE THE MONTH OF (SEPT 2014) WHO I PERSONALLY
PLACED IN THE HANDS OF COUNSILOR MS. KNUST, WHO
NEVER RESPONDED, AS A RESULT, HOF ADMINISTERED
A STG TICKET, I WAS PROHIBITED From CONTESTING
AGIANST THIS FALSE TICKET AND FOUND GUILTY without
PROPER DUE PROCESS. INSTITUTIONAL ADJUSTMENT COMMITTEE
FAILED TO GIVE AN ADAQUATE STATEMENT AS TO THE FIND OF GUILT.
YET VIOLATING THEIR OWN REGUALATIONS BY SIMPLY ADOPTING
THE RESIDENT VIOLATION REPORT AND NOT SUPPORTING FACTS. WOLFF V.
                                                              McDONALD

Subscribed and sworn to                    Respectfully submitted,
before me on the ___ day
of _____, ___.

                                           ONAFFIA MCFADDEN #S03239
                                           P.O BOX 1000
_____                    MENARD, IL 62259
NOTARY PUBLIC

I, ONAFFIA MCFADDEN, SWEAR UPON PENALTY OF PERJURY
THAT I AM THE AUTHOR OF THIS HERE AFFIDAVIT, AND
THAT I WRITTEN THIS DECLARATION WILLINGLY without
TREAT OR PROMISE. PURSUANT TO 28 USC 1746, 18 USC 1621 OR 735
ILCS 511-109, AND I SWEAR THIS AFFIDAVIT IS TRUE TO THE BEST OF MY
KNOWLEDGE. SIGNED OCT. 10, 2014

Exhibit 17

State of Illinois -- Department of Corrections
**DISCIPLINARY REPORT**

Page ___1___ of ___

☑ Disciplinary Report    Date: 4-12-14    ☐ Investigative Report    Date: ___

Committed Person: Jm Holman    No. B 38444    Facility: Menard C.C.

Observation Date: 8-12-14    Time: 11:30    Location: North 1   8-14

S. Krause   # 7849    Krause 8-12-14  1:00p

PRINT Employee's Name    Employee's Signature/Date/Time

Offense: 304 ☑  203 Drugs/Drug Paraphernalia; 308 Contraband/Unauthorized Property

Observation: On the above date and approx time while I was touring Gallery in North 1 and noticed a strange odor coming from 8-14 cell where I/M Holman B38444 is housed. After removing I/M from 8-14 cell Holding cell I searched the cell this I/M and approx 20 gal of homemade intoxicant located by the I/M Spillen @ 7%, 5 lb of sugar, 50 jelly packets and (30) 2oz. soda bottles. Chain of command was notified of & TDU by ID card and OTS

Witnesses, if any: ___

NOTE: Use continuation page if necessary to describe observation and/or list witnesses.

☑ Temporary Confinement    ☐ Investigative Status    Reasons: nature of offense

Krause
PRINT Name

Shift Supervisor's Signature and Date
(For Community Correctional Centers, Chief Adm. Off.)

☐ Confinement Reviewed by Reviewing Officer    Comment: Concur
Maj Zeiler        Maj Zeiler  8/12/14
PRINT Name        Signature/Date

☑ MAJOR, submitted to Adjustment Committee    ☐ MINOR, submitted to Program Unit
Maj Zeiler        Maj Zeiler  8/12/14
PRINT Name        Reviewing Officer's Signature and Date

☐ Reviewed by Hearing Investigator:    PRINT Name        Signature
(Adult Division Major Reports Only)

**PROCEDURES APPLICABLE TO ALL HEARINGS ON INVESTIGATIVE AND DISCIPLINARY REPORTS**
You have the right to appear and present a written or oral statement or explanation concerning the charges. You may present relevant physical material such as records or documents.

**PROCEDURES APPLICABLE TO HEARINGS CONDUCTED BY THE ADJUSTMENT COMMITTEE ON DISCIPLINARY REPORTS**
You may ask that witnesses be interviewed and, if necessary, they may be called to testify during your hearing. You may ask that witnesses be questioned along lines you suggest. You must indicate in advance of the hearing the witnesses you wish to have interviewed and specify what they could testify to by filling out the appropriate space on this form, tearing it off, and returning it to the Adjustment Committee. You may have staff assistance if you are unable to prepare a defense. You may request a reasonable extension of time to prepare for your hearing. If you are found guilty of a serious rule violation, you may be placed in confinement and/or lose privileges, and/or be required to make restitution. In addition, juveniles may receive a delay in recommended parole.

Committed Person Refused to Sign ☑

Committed Person's Signature and Number

Dunbar        Dunbar        4-12-14    7:48  am/pm
PRINT Serving Employee's Name    Serving Employee's Signature    Date and Time Served

I hereby agree to waive 24-hour notice of charges prior to this disciplinary hearing.

Offense Date: ___    Committed Person's Signature and Number

— — — (DETACH AND RETURN TO THE ADJUSTMENT COMMITTEE OR PROGRAM UNIT PRIOR TO THE HEARING) — — —

I would like the Adjustment Committee or Program Unit to consider calling the following witnesses regarding disciplinary report of ___  Date ___

NAME OF WITNESS: ___    Number/Cell/Title: ___

Witness can testify to: ___

NAME OF WITNESS: ___    Number/Cell/Title: ___

Witness can testify to: ___

Committed Person's Name and Number

DC 7205 (Rev. 4/98)   Distribution: 1) Master File; 2) Committed Person
IL 493-0651           3) Facility; 4) Facility



Exhibit
18

## Living Will

An offender who has reached his 18th birthday or who has been declared an emancipated minor may contact any Health Care Unit staff to request and to sign a living will at any time.

## Health Education

The Health Care Unit has a variety of health education programs, which can be individualized to meet your needs or concerns. Some topics/programs which are offered: HIV, Peer Education, Communicable Disease, Healthy Living, Smoking Cessation Classes, and a wide variety of handouts on specific issues. These can be obtained through sick call or written request to the Health Care Unit.

## HIV and AIDS

AIDS (Acquired Immune Deficiency Syndrome) is a fatal disease caused only by HIV (Human Immunodeficiency Virus). You shall be offered HIV testing and counseling, free of charge upon arrival and again prior to release. Individuals whose immune system are not functioning and have developed opportunistic infections that ordinarily do not pose a threat to most people. The people considered as high risk for contracting the HIV virus are:

1. Men who have had sex with men;
2. Individuals who have had sex with multiple partners;
3. Individuals who have used needles for self-injection of drugs not prescribed by a physician, especially those who share needles;
4. Individuals who have received a clotting factor for a coagulation disorder;
5. Individuals who have had heterosexual relations with drug users, bisexual males, individuals with hemophilia or coagulation disorders, transfusion recipients with HIV infection, and individuals born in a country where heterosexual transmission dominates;
6. Individuals who have received transfusions of infected blood or blood components (other than clotting factors);
7. Individuals who have received transplant tissues or organs or who have been artificially inseminated;
8. Individuals who have worked in a health care or clinical setting; and
9. Any individuals who clinically demonstrate a persistent rash, swollen glands, persistent diarrhea, persistent cough, persistent fever, persistent night sweats, or neurological symptoms or mental confusion.

What we in prison have to be mainly concerned about in reference to getting AIDS or spreading it is to know that the HIV virus is spread from person to person through intimate sexual contact, or the sharing of needles and through tattoos. You cannot get the disease through casual contact such as sneezing, coughing, spitting, handshaking or any other non-sexual contact. You cannot get it from toilet seats, tubs or showers, or from dishes, utensils or linens. You cannot get it from food prepared or served by an infected person, and you cannot get it from living around or with someone infected. These things alone tell us we cannot get HIV virus unless we thus violate the rules forbidding sex, drugs and tattoos.

A lot has been learned about AIDS in recent years, but make no mistake about it; it's still a deadly disease. Researchers were elated a few years ago when they finally learned how the AIDS virus mounts its assault upon the body. The tests continue for a cure, but in the meantime, prevention is the only known thing proven to work, and that falls solely upon each one of us individually. Remember, get high, get stupid, and get AIDS! But, we can avoid it, and we need to. There is nothing to prevent the disease from getting you, but you. Think about it.

If your body sends signals there's something unusual going on through pain or any of the previously discussed symptoms, put in a sick call slip and go to the Health Care Unit. For those of you who may not want to discuss touchy and personal problems with staff, nurses, or employees, there is also a Peer Educator willing to talk to you. All you have to do is fill out a request slip, send it to the Health Care Unit stating you wish to see an Offender Peer Educator and you will be put on a call-line.

Don't take chances with your life or your health.

## Mental Health: ←

Offenders admitted to Menard Correctional Center have access to mental health services. Services provided include routine referrals as well as emergency and crisis referrals.

Any employee whose duties bring him into periodic contact with an offender who appears to be in need of such an evaluation makes referrals for mental health evaluations. Any employee can make an emergency crisis referral by contacting a member of the crisis team.

The institution has psychiatrist and other mental health professionals who are scheduled at the facility on a regular basis.

The institution has areas designated for close supervision which consists of a treatment status that provides for verbal and visual monitoring of those offenders determined by a mental health professional to be acutely disturbed or suicidal.

All staff is responsible for reporting unusual behavior to the Crisis Intervention Team. This team is composed of various members of the counseling, medical, security, chaplaincy and mental health staff.

An offender will be placed in the crisis care area only after evaluation and recommendation by a mental health professional. For the most part, offenders placed in the crisis area are those who are determined to pose a danger to themselves or others.

If you have a history of psychiatric behavior, or feel you are in need of a psychiatric evaluation, consult with your correctional counselor or any staff.

Psychologists, social workers, and psychiatrists provide mental health services five (5) days per week between the hours of 8:00am and 4:00pm. Services are provided by appointment on a call line basis. This facility has capabilities for telepsychiatry sessions. Services may be obtained in the following manner:

A. Writing a note directly to the Mental Health Department.

B. Asking your counselor to refer you to the Mental Health Department

C. Informing the cellhouse officer of your desire.

D. Asking the Social Worker and/or Psychiatrist making rounds in the Segregation or the Protective Custody Unit to place you on the call line

## LEISURE TIME SERVICES

In the General Division, during winter schedule, activities are based in Randolph Hall and the Multi-Purpose Building. These buildings include gymnasium facilities, dayroom facilities for table games, and telephones. As scheduled, all offenders are eligible to utilize these privileges excepting those in Disciplinary Segregation, and those in C grade or otherwise specifically under loss of recreation privileges.

At the Menard Medium Security Unit, the gymnasium is similarly equipped with the addition of an open weight room, billiards, and foosball tables.

Regardless of grade, offenders are given the opportunity for recreational yard, weather permitting.

Inmates (excluding those housed in segregation) may have taken the following items with them to yard or recreation:

1 inmate I.D. card (mandatory)
1 deck of playing cards
1 set of dominoes or (1) one board game (chess/checkers)
1 pair of cloth heresy gloves
1 handball (no canisters)-East, West, and South houses only
1 wash cloth (no large towels)

Inmates will not be allowed to take extra clothing items with them to yard or recreation, i.e., only clothing allowed is what is worn.

## CHAPLAINCY SERVICES AND RELIGIOUS PRACTICE

The Chaplaincy Department schedules various religious services throughout the week in order to accommodate offenders various religious needs. Contact cellhouse staff or write to the Chaplaincy Department in order to obtain schedule of services.

## LIBRARY SERVICES AND LEGAL MATERIAL

Opportunities for access to library services and legal materials shall be provided. However, general library services and/or direct access to a law library may be limited, restricted or denied if library privileges have been abused or institutional safety or security may be jeopardized. An alternative means of access shall be provided in these instances. Requests for assistance from the library should be submitted in writing to the library through institutional mail. All requests for access are handled on a first-come, first-serve basis, unless a verified court deadline is known or claimed. Requests for assistance from the library should be submitted in writing to the library through institutional mail. All requests for access are handled on a first-come, first-serve basis, unless a verified court deadline is known or claimed.

ALL REQUESTS FOR LIBRARY ACCESS MUST INCLUDE OFFENDER'S NAME, I.D. NUMBER, CELLHOUSE AND CELL LOCATION.

EXHIBIT
19...

Exhibit
(B)

STATE OF ILLINOIS        )
                          ) SS
COUNTY OF Randolf         )

## AFFIDAVIT

I, Jason Holman #B-38488 being first duly sworn upon my oath depose and state that the following matters are both true and correct made upon personal knowledge and belief, and if called as a witness, I am competent to testify thereto: That I was wrote a disciplinary ticket for 203 Drugs Parapherals and 308 Contraband charge on 8-12-14 my cellmate was also An African American who was also wrote the same disciplinary ticket we were both brought to the Segregation unit at the Adjustment Comittee hearing we both plead not guilty and (were convicted) On 9-3-14 and 9-4-14 I witness my cellmate Lisle try to hang and kill his self in which I viewed major injuries around his neck from (shoe string) deep bruised marks. 9114 he continued to inform the gallery officer Young and other C/o's and on 9-3-14 and 9-4-14 he informed the nurses and provided them with suicide notes informing them that he was gone kill his self nurses and C/o's did nothing but laugh and tell him make sure he hang his self right. ON 9-5-14 I woke up to Lisle hanging from shoestrings from the cell door and the nurse and officer yell he's hanging help cut him down I jump off the bed and grab his legs to hold him up and the nurse pulled on the shoe string untill it came off I holded Lisle up his eyes was rolling back and his breathing was not normal he was falling out of conciness his neck was bruised and tore from the shoe string with big Red marks. I ask my cellmate why was he trying to kill his self he stated do to racial discrimination of a disciplinary report which was the same as mind and I agree that it was racial discrimention were he was brought to seg and his cellmate was not do to him being white were me and my cellmate were black and we both were brought to segregation. And I also seen him trying to inform mental health to get help but he was never called.

Page 1 of 2

Affidavit (continued) Page 2 of 2

Subscribed and sworn to
before me on the ___day
of _____, ____.

_____

NOTARY PUBLIC

Respectfully submitted,

Jason Holman

ID oc# B-38488

Declaration under Penalty of Perjury

Pursuant to 28 USC 1796, 18 USC 1621 or 735 ILCS/1-104, I Declare,
under Penalty of Perjury That I am a named Party in the above
action. That I have read The above Documents, and that the information
contained these in is true and correct to the best of my knowledge
Date: 10-22-14

ILLINOIS DEPARTMENT OF CORRECTIONS

## Audio - Visual Privilege Restoration Request Determination

<u>Menard</u> Correctional Center

Offender Name: _Tisk, Steven_ ID#: R 40159 Date: 10-16-14

Cell Location: N 2-8-07 Date in Seg: 8-12-14 Amount of Seg Time: 4mo Seg out date: 12-12-1

Current Charge (include offense #): 202, Damage or misuse of property

203, Drugs and Drug para.

Reason for Segregation Placement: Abuse

_____

_____

List injuries incurred by Staff or Offender: None

_____

Last Major IDR: abuse

Last Minor IDR: _____

Your request for restoration of your audio-visual privileges has been received. Upon review of your disciplinary record, your request has been:

☐ **Approved.** Your audio-visual equipment may be returned on or about _____ pending no further disciplinary reports. Subsequent disciplinary infractions while in segregation status may result in these privileges being revoked indefinitely.

☒ Denied due to:

    ☒ Serious nature of rule infraction resulting in current segregation placement.

    ☐ Additional disciplinary report(s) received while in segregation.

    ☐ Current Staff Assault Disciplinary Report.

    ☐ Current audio-visual denial is result of disciplinary action taken by the Adjustment Committee.

    ☐ Have not served 60 consecutive days in segregation.

You may reapply on or about 12-23-14

Screened by: _____ Date: 10-16-14

_____ 10-23-14
Signature of Chief Administrative Officer's Designee    Date

DOC 0270 (Eff. 04/2005)

Distribution:   Master File
          Personal Property
          Offender
          File

21

Printed on Recycled Paper

STATE OF ILLINOIS )
) SS
COUNTY OF Randolf )

## AFFIDAVIT

I, TZQUZCW CLAY W27763 being first duly sworn upon my oath depose and state that the following matters are both true and correct made upon personal knowledge and belief, and if called as a witness, I am competent to testify thereto: My Name Is TZQUZCW CLAY R@ R27703 I A Inmate In Menard Correctional Facility. Im Writing To Let You Know That Menard Has Continuously Withheld Eviedence When It Coms To Finding Things In Inmates Property. Constantly Violateding our Constitutional And Institutional Rights. In Going Thraigh This With My Due Process Dealing With My Disciplinary Ticket. By Not Having The Evidence The Ticket Said I Had And Were They Found It. The Adjustment Committee Subpose To Have. To Show What They Found. Which They Dit Not Have on Hand. There for The Adjustment Committee Violated My Due Process. Meaning The Adjustment Committee Failed To Give An Adequate Statement As To The Evidence Relied upon To Support The Disciplinary Action Taken. Therefor The Adjustment Committee Violated There own Regulations. The Adjustment Committee did Not Meet The Due Process Requirement.

Page 1 of 2

22

Affidavit (continued) Page 2 of 2

Subscribed and sworn to
before me on the ___ day

of _____, ___.

NOTARY PUBLIC

Respectfully submitted,

~~Sixteen Clay R27703~~

Declaration under Penalty of Perjury

Pursuant To 28 usc 1746, 18 usc 1621 or 735 ILCS 5/1-109, I Declare
under Penalty of Perjury That I Am A Named Party In The Above
Action, That I have Read The Above Documents, And That The Information
Contained there In IS True and Correct to the best of my Knowledge

Date: 10-10-14

Name Sixteen Clay R27703

I Dai
Menard CC, P.O. Box 1000
Menard, IL, 62259

# INMATE SERVICES OFFICER

**NAME:** Steven Lisle JR R40159

**DATE:** 11-13-14

**CELL #:** N#2 8-07

**CHARGE:** 203 DrugParath 202 misuse Property 3 contraband

**REQUEST:** On about 9-3-14 I sent a grievance to springfield stating that my grievance was forged and that I resubmitted a new grievance on the same issue and told Springfield to keep a copy for a duration I grievant advise my grievance was forge However after resubmitting Maned C.C. has "refused" to address my grievance again on 10-24-14 I persent wrote the grievance officer to respond to any grievance again no response, Do to Springfield having the orignal grievance forged I ask that you address my grievance and grant relief

**SIGNATURE** Steven D Lisle

I give you (7) working days to respond before I File a lawsuit I have showed that I'm exhausting all remedies.

**RESPONSE:** _____

**SIGNATURE**_____

23

Exhibit 24

STATE OF ILLINOIS ) ss
COUNTY OF RANDOLPH )

## AFFIDAVIT

I, STEVEN D LISLE JR # R40155, being first duly sworn upon my oath depose and state the following matters both true and correct made upon personal knowledge and belief and if called as a witness, I am competent to testify there to:

That I wrote springfield and advise them that they were past the 6 month deadline to answer to my 8-12-14 Discriminatio disciplinary report and requested that the administration review board off inmate issues address the grievance I recieved no response. I state that everything I stated in the 1983 civil petition to be true pages 1-24

Date 7-15-15

Respectfully submitted
Steven D Lisle JR # R40159

## DECLARATION under Penalty of Perjany

Pursuant to 28 USC 1746, 18 USC 1621 & 735 ILCS 5/1-109, I declare under peroalty of Perjun that I am a named party in the above action, That I have read the above documents and that the information contained therein is true and correct to the best of my knowledge

Steven D Lisle R40159
Menard CC
P.O. Box 1000
Menard IL 62259

CERTIFICATE AND AFFIDAVIT OF
SERVICE

I, Steven DLisle JR state that I Efiled a 1983
Civil rights lawsuit at the Pontiac correctional center
through the pontiac c.c. Law Library using Electronic filing
on 8-26-15

State all above to be true and correct

Steven DLisle R40159
Steven DLisle JR

ILLINOIS DEPARTMENT OF CORRECTIONS

## Audio - Visual Privilege Restoration Request Determination

__Menard_____ Correctional Center

Offender Name: _Holman, Jason_____ ID#: _B30408_ Date: _10-16-14_

Cell Location: _N2-8-18_ Date in Seg: _8-12-14_ Amount of Seg Time: _4 mo_ Seg out date: _12-12_

Current Charge (include offense #): _203° Drugs + Drug para._
_____ _308° Unauthorized/contraband_

Reason for Segregation Placement: _Above_
_____
_____
_____

List injuries incurred by Staff or Offender: _none_
_____
_____

Last Major IDR: _Above_

Last Minor IDR: _____

Your request for restoration of your audio-visual privileges has been received. Upon review of your disciplinary record, your request has been:

[X] **Approved.** Your audio-visual equipment may be returned on or about _10-23-14_ pending no further disciplinary reports. Subsequent disciplinary infractions while in segregation status may result in these privileges being revoked indefinitely.

[ ] **Denied** due to:

  [ ] Serious nature of rule infraction resulting in current segregation placement.

  [ ] Additional disciplinary report(s) received while in segregation.

  [ ] Current Staff Assault Disciplinary Report.

  [ ] Current audio-visual denial is result of disciplinary action taken by the Adjustment Committee.

  [ ] Have not served 60 consecutive days in segregation.

You may reapply on or about _____.

Screened by: _Sam Hill_ Date: _10-16-14_

_____ _10-22-14_
Signature of Chief Administrative Officer's Designee          Date

Distribution:   Master File
                Personal Property
                Offender
                File

20

DOC 0270 (Eff. 04/2005)

Printed on Recycled Paper

IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT

STEVEN D LISLE, JR #R40155                    )

      v.   Plaintiff                          )

KIMBERLY BUTLER AND MENARD EMPLOYEES )  SUMMONS
            AND
ADMINISTRATIVE REVIEW BOARD      ) Civil Action No.

      Defendants                           )

                                  )


KIMBERLY BUTLER    Po Box 1000 menard IL 62259

L. T. WILBORNE    Po Box 1000 menard IL 62259

KENTE BROOKMAN    Po Box 1000 menard IL 62259

DUNBAR    Po Box 1000 menard IL 62259

C. MC CLURE    Po Box 1000 menard IL 62259

L. T. SAMMAUEL    Po Box 1000 menard IL 62259

SPILLER Internal Affairs - Po Box 1000 menard IL 62259

Ramon    Po Box 1000 menard IL 62259

Young    Po Box 1000 menard IL 62259

Susan HILL    Po Box 1000 menard IL 62259

HOFF -Internal Affairs- Po Box 1000 menard IL 62259

JORDIN .Nurse-    Po Box 1000 menard IL 62259

Horman - NURSE    Po Box 1000 menard IL 62259

Jana South- nurse    Po Box 1000 menard IL 62259

Charlette Midget    Po Box 1000 menard IL 62859

T. Skeen    1301 concordia Court Springfield IL 62 794-9277

Administrative Review Board 1301 Concordia Court springfield IL 62794-9217

John Doe    Po Box 1000 menard IL 62259

Jane Doe    Po Box 1000 menard IL 62259

John or Jane Doe    Po Box 1000 menard IL 62259

Menard Employees    Po Box 1000 menard IL 62259

TO THE ABOVE-NAMED DEFENDANTS

You are hereby summoned and required to serve upon plaintiffs, whose
address is Steven D Lisle JR#R40157 PoBox 99 Pontiac, IL 61674
an answer to the complaint which is herewith served upon you, within 20
days after service, or 60 days if the U.S. Government or officer/agent thereof
is a defendant. If you fail to do so, Judgment by default will be taken against
you for the relief demanded in the complaint.

   Clerk of the Court

   Date:

⁊

# MEMORANDUM OF LAW

1. Racial discrimination and segregation by prison authorities are unconstitutional under the Equal Protection Clause of the Fourteenth Amendment. Washington v. Lee, 263 F. Supp. 327 (M.D. Ala. 1966) See Aruguments in Civil Rights Complaint 1-24

2. Holding allegation that black prisoner was placed in solitary while a white prisoner who engaged in the same conduct was not stated an equal protection claim Lee v Washington, 390 U.S. 333, 88 Sct 994 (1968) See Arguments in Civil Rights Complaint 1-24

3. U.S. Const. Amend (XIV) Due process of law and Equal protection of the law. See Arguments in Civil Rights Complaint 1-24

4. U.S. Const. Amend (V) No person shall be deprived of life, liberty or property without due process of law. See Arguments in Civil Rights Complaint 1-24

5. Public employees are responsible for their own misdeeds not those of others Burke v Raemisch, 555 F.3d 592, 596 (7th cir 2009) See Arguments in Civil Rights Complaint 1-24

6. Prisoners must exhaust only those administrative remedies that are available to him See 42 U.S.C. § 1997e(c): Johnson v Litscher, 260 F.3d 826, 829 (7th Cir 2001) The Eighth and Fifth Circuits have deemed administrative remedies exhausted when prison officials fail to respond to inmate grievances because those remedies had become "unavailable" Foulk v Charrier, 262 F.3d 687, 698 (8th cir 2001) Both circuits based their holdings on the plain meaning of "available." Miller, 247 F.3d at 740: Underwood, 151 F.3d at 295 The Seventh Circuit joins the Eighth and Fifth circuits on this issue because we refuse to interpret the PLRA "so narrowly as to permit [prison officials] to exploit the exhaustion requirement through indefinite delay in responding to grievances. Goodman v Carter, No2000 C 948, 2001 WL 755137. at *3 (N.D. Ill. July 2, 2001) See Arguments in Civil Rights Complaint 1-24

1 - 62

7. Prisoners have the due process right to call witnesses at their hearing and the right to a partial adjustment hearing. Wolff v McDonnell, 418 U.S. 539 (1974)

The severity of the conditions matter a lot. in Palmer v Richards, 364 F.3d 60 (2d cir 2004) the same court held that 77 days under Aggravated conditions could be atypical and significant. Litschen, 468 F.3d 445 (7th cir 2006) and Mitchell v Horn, 318 F.3d 523 (3d cir 2003) See Arguments in Civil Rights Complaint 124

8. The Eighth Amendment forbids "Cruel and unusual punishment" and is probably the most important amendment for prisoners. U.S. Const. Amend (VIII)

The Eighth Amendment protects the right to medical care. The Supreme Court explained that this is because an inmate must rely on prison authorities to treat his medical needs if the authorities fail to do so, those needs will not be met Estelle v Gamble, 429 U.S. 97, 103 (1976)

The same Eighth Amendment principles apply to mental health care Gates v Cook, 376 F.3d 323 332 (5th cir 2004) Mental health needs are no less serious than physical needs Brocony Zavaras, 63 F.3d 967, 970 (10th cir. 1995) deliberate indifference to an inmates serious mental health needs violates the eighth amendment. Well Man v Faulkner, 715 F.2d 269, 272 (7th cir 1983) Hoptowit Ray, 682 F.2d 1237, 1253 (9th cir 1982 Bowring v Godwin, 551 F.2d 44, 47 (4th 1977)

Housing Mentally Ill prisoners in segregation Jones El v Berge 164 F.supp2d 1096 (WDWis2001)

Prisoners should not be subjected to extreme heat or cold and should be given bedding and clothing appropriate for temperature Gibson v Early, 541 F.3d 267 (5th cir 2008)
Gaston v Coughlin, 249 F.3d 156 (2d Cir. 2001

Mental health concerns can qualify as serious medical needs. Several courts have held that a risk of Suicide is a serious medical need for the purposes of the Eighth Amendment. Estate of Cole by Pardue v Fromm, 94 F.3d 254 (7th Cir. 1996)
Gregoire v Class, 236 F.3d 413 (8th cir 2000

A prison doctor fails to respond appropriately or does not respond at all to your serious medical needs. Scott v Ambani, 577 F.3d 642 (6th cir 2009

Prison guards or other non-medical officials intentionally deny or delay your access to treatment. Brown v District of Columbia, 514 F.3d 1279 (D.C. Cir 2008)

Prison officials can be held liable even for following the advice of prison medical officials if it is obvious even to a lay person, that the person is in need of hospitalization or other critical medical care. McRaven v Sanders 577 F.3d 974 (8th Cir 2009)

The Constitution protects your right to have your sensitive medical information kept private. Gossip is not a legitimate penological objective. Powell v Schriver, 175 F.3d 107. 113 (2d Cir 1999)

See Arguments in Civil Rights Complaint 1-24