IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| STEVEN D. LISLE, | ) | |
| # R-40159, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 15-cv-00965-MJR |
| | ) | |
| KIMBERLY BUTLER, LT. WILLBORNE, | ) | |
| KENTE BROOKMAN, DUNBAR, | ) | |
| C. McCLURE, SAMMAUEL,[1] SPILLER, | ) | |
| RAMON, YOUNG, SUSAN HILL, | ) | |
| HOFF, JORDIN, HORMAN, | ) | |
| JANA SOUTH, CHARLOTTE MIDGET, | ) | |
| DR. JOHN DOE, DR. JANE DOE,[2] | ) | |
| G/O JOHN DOE, G/O JANE DOE,[3] | ) | |
| and MENARD EMPLOYEES, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

Plaintiff Steven Lisle, an inmate who is currently incarcerated at Pontiac Correctional Center ("Pontiac"), brings this *pro se* action pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights at Menard Correctional Center ("Menard"). According to the complaint, Plaintiff, an African-American, received a false disciplinary ticket for possession of contraband that belonged to his cellmate, a Caucasian, on August 12, 2014. (Doc. 1, pp. 1-16). Following an unfair disciplinary hearing, Plaintiff was found guilty of the infraction and

---

[1] The complaint consistently refers to this defendant as "Sammuel," not "Sammauel." The CLERK shall therefore be DIRECTED to change the spelling of this party's name to "Sammuel" in CM/ECF.

[2] The two unknown doctor-defendants are listed as "John Doe Medical Staff Doctor" and "Jane Doe Medical Staff Doctor" in CM/ECF. For ease of reference, the CLERK shall be DIRECTED to alter the designation of these parties to "Dr. John Doe" and "Dr. Jane Doe" in CM/ECF.

[3] The unknown grievance officer-defendants are listed as "John or Jane Doe Grievance Officers" in CM/ECF. For ease of reference, the Court will refer to these parties as "G/O John Doe" or "G/O Jane Doe." The CLERK shall be DIRECTED to alter the designation of these parties on the docket sheet in CM/ECF accordingly.

punished with 120 days in segregation, where he attempted to commit suicide on three occasions. Prior to each attempt, Plaintiff informed members of Menard's prison and/or medical staff that he was suicidal, but the staff took no action to protect him from self-harm.  Plaintiff's cellmate, who initially admitted to possession of the contraband, received no punishment.  *Id*.

Plaintiff now sues fifteen known and numerous unknown prison officials for violating his rights under the First, Eighth, and Fourteenth Amendments.  *Id*. at 22.  He seeks declaratory judgment and monetary damages.  *Id*. at 22-24.

## Merits Review Under 28 U.S.C. § 1915A

This case is now before the Court for preliminary review of the complaint pursuant to 28 U.S.C. § 1915A.   Under § 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims.  28 U.S.C. § 1915A(a).  The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief.  28 U.S.C. § 1915A(b).  Plaintiff's complaint survives preliminary review under this standard.

## Discussion

The Court has organized its discussion of the complaint into three sections that address claims arising from: (1) Plaintiff's receipt of a false disciplinary ticket; (2) Plaintiff's three suicide attempts; and (3) Plaintiff's grievances filed in connection with his disciplinary ticket and/or suicide attempts.  The Court's analysis of the merits of each claim follows a summary of the factual allegations offered in support of each below.  Any claims that are not addressed in the context of this discussion are considered dismissed without prejudice.

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court has organized the claims in Plaintiff's *pro se* complaint into ten (10) separate counts, as follows:

**Count 1:**     **Fourteenth Amendment claim for deprivation of a protected liberty interest without due process of law against Defendant Brookman;**

**Count 2:**     **Fourteenth Amendment equal protection claim against Defendants Sammuel, Ramon, and Brookman;**

**Count 3:**     **Eighth Amendment claim for intentionally disregarding a known risk of suicide against Defendants Jordin, Willborne, Horman, McClure, Young, and South;**

**Count 4:**     **Eighth Amendment conditions of confinement claim against Defendant South;**

**Count 5:**     **Eighth Amendment deliberate indifference to medical needs claim for failing to treat the injuries Plaintiff sustained as a result of his suicide attempt(s), which shall be dismissed without prejudice;**

**Count 6:**     **Fourteenth Amendment due process claim for ignoring, delaying, or denying Plaintiff's grievances, which shall be dismissed with prejudice;**

**Count 7:**     **Fourteenth Amendment denial of access to courts claim arising from interference with grievances and with Plaintiff's ability to exhaust his administrative remedies prior to filing suit, which shall be dismissed with prejudice;**

**Count 8:**     **First Amendment retaliation claim arising from the denial of Plaintiff's audio/television privileges, which shall be dismissed without prejudice;**

**Count 9:**     **Conspiracy claim arising from the denial of due process and issuance of a false disciplinary ticket, which shall be denied without prejudice; and**

**Count 10:**     **Claims against Defendants Butler, Hill, Midget, G/O Jane Doe(s), and G/O John Doe(s) for their personal involvement in violating Plaintiff's rights under the Eighth and Fourteenth Amendments, as described in Counts 1, 2, 3, and 4.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.

### 1.  **Disciplinary Ticket**

According to the complaint, Plaintiff was issued a disciplinary ticket for possession of contraband that contained alcohol on August 12, 2014.  (Doc. 1, p. 3).  As Plaintiff walked to his cell that day, he observed Officer Spiller leaving the area with a test tube.  Officer Spiller stated that the contents belonged to Plaintiff.  *Id*.

When Plaintiff arrived at his cell, he discovered that it had been searched. Plaintiff's cellmate, Brian Thurman, refused to return to the cell.  Plaintiff noticed that Thurman's property box was missing.  *Id*. at 4.  Officer Ramon informed Plaintiff that both inmates would receive a disciplinary ticket for possession of the contraband that was discovered in Thurman's property box.  Officer Ramon took Plaintiff to segregation, while Thurman stayed behind.

As he walked by Thurman, Plaintiff told him to "take his 'weight'" and accept responsibility for the contraband.  *Id*.  Thurman admitted that the contraband belonged to him. Lieutenant Sammuel, who was present and heard Thurman's admission, said that he would have to report the admission to internal affairs.  *Id*. at 4.  Even so, the lieutenant ordered Officer Ramon to "take that hole some (sic) 'white man' back to his cell and get that 'coon' out of [his] cell house and to segregation where he belong[ed]."  *Id*. at 4-5.

That evening, Officer Dunbar issued Plaintiff a disciplinary ticket for possession of contraband.  Plaintiff asked for a pen to sign the ticket and to prepare a written request for Lieutenant Sammuel's witness testimony at his disciplinary hearing.  Officer Dunbar denied

Plaintiff's request for a pen.  Plaintiff then asked Officer Dunbar, Tonya Knust, and Internal Affairs Officer Hoff to make sure that Lieutenant Sammuel was available to testify.

Plaintiff attended a hearing before Menard's adjustment committee on August 13, 2014. *Id.* at 6.  At the hearing, he learned that Thurman also received a ticket, but pleaded not guilty to the rule violation.  Plaintiff also pleaded not guilty.  He asked Lieutenant Brookman to call Lieutenant Sammuel as a witness.  Although Lieutenant Brookman agreed to do so, the hearing summary allegedly indicated that Plaintiff requested no witnesses to testify on his behalf. The adjustment committee found Plaintiff guilty and punished him with 120 days in segregation, loss of phone privileges, no contact visits, loss of commissary, and a grade demotion.[4]  *Id.* at 7, 17.  Thurman received no punishment.

The following claims arise from the above-referenced allegations: (1) **Count 1:** Fourteenth Amendment claim for deprivation of a protected liberty interest without due process of law against Defendant Brookman; and (2) **Count 2:** Fourteenth Amendment equal protection claim against Defendants Sammuel, Ramon, and Brookman.

### Count 1 – Due Process

The complaint articulates a viable Fourteenth Amendment claim for deprivation of a protected liberty interest without due process of law (**Count 1**) against Defendant Brookman only.  This claim arises from Plaintiff's receipt of an allegedly false disciplinary ticket for possession of contraband on August 12, 2014.  Standing alone, the receipt of a false disciplinary ticket does not give rise to a due process violation.  This is because "due process safeguards associated with prison disciplinary proceedings are sufficient to guard against potential abuses[,] [and a] hearing before a presumably impartial Adjustment Committee terminates an officer's

---

[4] Plaintiff does not allege that he lost any good conduct credit.  Because he neglected to include a copy of the hearing summary, the Court cannot confirm this.

possible liability for the filing of an allegedly false disciplinary report." *Hadley v. Peters*, 841 F. Supp. 850, 856 (C.D. Ill. 1994), *aff'd*, 70 F.3d 117 (7th Cir. 1995) (citations omitted).

Due process safeguards that are associated with prison disciplinary hearings include: (1) advance written notice of the charges against him; (2) the opportunity to appear before an impartial hearing body to contest the charges; (3) the opportunity to call witnesses and present documentary evidence in his defense (if prison safety allows and subject to the discretion of correctional officers); and (4) a written statement summarizing the reasons for the discipline imposed. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974). In addition, the decision of the adjustment committee must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395 (7th Cir. 1994). Plaintiff alleges that his due process rights were violated at his disciplinary hearing because no witnesses were called to testify on his behalf, despite Defendant Brookman's assurances that Defendant Sammuel would be. Plaintiff further alleges that the adjustment committee was motivated by racial animus.

Even if Plaintiff's due process rights were violated, he may not have a Fourteenth Amendment claim. An "inmate's liberty interest in avoiding segregation is [still] limited." *Hardaway v. Meyerhoff, et al.*, 734 F.3d 740 (7th Cir. 2013) (quoting *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009)). A protected liberty interest arises only when Plaintiff's confinement in segregation "impose[s] an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Hardaway*, 734 F.3d at 743 (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Courts consider two factors when making this determination: "the combined import of the duration of the segregative [sic] confinement *and* the conditions endured." *Id*. at 743 (citing *Marion*, 559 F.3d at 697-98) (emphasis in original).

A liberty interest may arise if the length of confinement in segregation is substantial and the record reveals that the conditions of confinement are unusually harsh. *Marion*, 559 F.3d at 697-98, n. 2. A term of segregation that is lengthy requires scrutiny of the actual conditions of segregation. *Id.* (citing *Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005) (analyzing conditions of confinement but noting that prisoner's segregation "was still not so long as to work an atypical and significant hardship) (90 days); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1998) (holding that no liberty interest was implicated and noting "it was obviously a relatively short period when one considers his 12 year prison sentence") (approximately 70 days); *Palmer v. Richards*, 364 F.3d 60, 65-66 (2d Cir. 2004) (noting that cases involving segregation of less than 30 days may be dismissed without a detailed factual record of conditions of confinement but holding that 77 days of segregation warrant further review)).

Plaintiff was punished with 120 days of segregation and endured conditions that he alleges were atypical and harsh. Under the circumstances described in the complaint, the Court cannot dismiss Count 1 at screening. Further inquiry into the conditions of Plaintiff's confinement in segregation is necessary. Accordingly, **Count 1** shall proceed against Defendant **Brookman**, who presided over the disciplinary hearing.

This claim shall be dismissed against all other individuals who are named in connection with Count 1, including Dunbar, Knust, Spiller, Hoff, Ramon, and Sammuel. Neither Dunbar nor Knust are named as defendants in this action, so Count 1 cannot proceed against them. *See Myles v. United States*, 416 F.3d 551 (7th Cir. 2005) (for an individual to be properly considered a party under Rule 10, he must be "specif[ied] in the caption"). Count 1 shall also be dismissed against Defendants Spiller, Hoff, Ramon, and Sammuel because the allegations do not suggest that any of these defendants violated Plaintiff's due process rights at the prison

disciplinary hearing.  By all indications, they had no involvement in the hearing.  Accordingly, Count 1 cannot proceed against any other defendant and shall be dismissed without prejudice.

### Count 2 – Equal Protection

The complaint states a viable Fourteenth Amendment equal protection claim (**Count 2**) against Defendants Sammuel, Ramon, and Brookman, each of whom allegedly singled out Plaintiff for disparate treatment because of his race.  The Equal Protection Clause of the Fourteenth Amendment prohibits a state from depriving persons within its jurisdiction of equal protection of the laws.  U.S. CONST. amend. XIV.  Plaintiff alleges that he was denied equal protection of the law because of his race.  Generally speaking, a plaintiff who asserts an equal protection violation based on race "must establish that a state actor has treated him different[ly] than persons of a different race and that the state actor did so purposefully." *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000) (citing *Washington v. Davis*, 426 U.S. 229 (1976); *Indianapolis v. Minority Contractors Ass'n, Inc. v. Wiley*, 187 F.3d 743 (7th Cir. 1999)). "Purposeful discrimination" indicates that the state actor singled out a particular group for disparate treatment and took action with the intention of causing an adverse effect on the identifiable group. *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982).

According to the allegations, Defendant Sammuel made it clear that he was treating Plaintiff differently because of his race when he ordered Defendant Ramon to take Plaintiff to segregation.  Defendant Ramon carried out the order, even after hearing Defendant Sammuel's overtly racist comment and Thurman's admission that the contraband was his. Plaintiff's allegation that the adjustment committee was motivated by racial animus when finding him (and other similarly situated African-American inmates) guilty supports an equal protection

claim against Defendant Brookman, who presided over the hearing.  Accordingly, Count 2 shall proceed against Defendants Sammuel, Ramon, and Brookman.

This claim shall be dismissed without prejudice against all other defendants.  In addition to Defendants Sammuel, Ramon, and Brookman, the complaint identifies Dunbar, Knust, Spiller, and Hoff.  As previously stated, Knust and Dunbar are not named as defendants, so Count 2 shall be dismissed against them.  The allegations against Defendants Spiller and Hoff do not suggest that either defendant intended to cause an adverse effect on Plaintiff because of his race.  Defendant Spiller allegedly accused Plaintiff of possessing contraband after finding a substance containing alcohol in Plaintiff's cell.  Defendant Hoff was one of three individuals who failed to ensure that Defendant Sammuel was present to testify at Plaintiff's disciplinary hearing (before Defendant Brookman agreed, at the hearing, to call the witness but did not).  Without more, these allegations do not suggest that Defendant Spiller or Hoff violated Plaintiff's rights.  Accordingly, **Count 2** shall be dismissed without prejudice against all of the defendants other than Defendants **Sammuel**, **Ramon**, and **Brookman**.

## 2.      <u>Suicide Attempts</u>

The complaint further alleges that as a result of the disciplinary action taken against him, Plaintiff suffered a mental breakdown and became suicidal.  (Doc. 1, pp. 8, 10).  He attempted to hang himself on three separate occasions.  *Id*. at 10-15.

On September 3, 2014, Nurse Jordin and Sergeant Willborne discovered Plaintiff hanging from a rope made of shoestrings.  *Id*. at 10.  As Nurse Jordin approached the cell, she noticed Plaintiff's hands dangling outside of his cell.  He held a suicide note.  Rather than summon a crisis team or medical help, Nurse Jordin instructed Plaintiff to put his hands back in the cell.  *Id*. at 11.  At the same time, the rope around Plaintiff's neck snapped and broke, thwarting his

efforts to commit suicide.  He asked Nurse Jordin and Sergeant Willborne to take his suicide note, but they walked away.

On September 4, 2014, Plaintiff handed Nurse Horman a suicide note.  In the presence of Nurse Horman and Officer McClure, Plaintiff explained that he was suicidal and had already attempted to kill himself the previous day.  He then took a shoestring, fashioned it into a rope and attempted to commit suicide a second time.  Once again, the rope snapped, and Plaintiff was unable to complete the suicide.  *Id*. at 11.

On September 5, 2014, Plaintiff handed Officer Young a suicide note.  He informed the officer that he was going to attempt suicide a third time.  Like those before him, Officer Young took no action to stop Plaintiff.  Later the same night, an unknown nurse ("Nurse Jane Doe") found Plaintiff hanging from a rope with his hands tied behind his back.  She screamed for help and tried to remove the rope from Plaintiff's neck, causing it to dig deeper into his neck and further prevent him from breathing.  *Id*. at 12.  The commotion stirred Plaintiff's cellmate from his sleep, and he assisted the nurse in rescuing Plaintiff.  *Id*. at 13.

Soon after the third attempt, Plaintiff was relocated to Menard's North II cell house.  An unknown officer ("Officer John Doe") asked that he be taken to Menard's mental health unit for further observation.  At the officer's request, Plaintiff was moved to the mental health unit and placed on suicide watch.  *Id*. at 13-14.

There, Plaintiff met with Jana South, who responded to news of his suicide attempts by stating, "[Y]ou suck.  [Y]ou tr[i]ed three times to kill yourself[.]  [Y]ou should have killed yourself the right way the first time."  *Id*. at 13.  In the days that followed, Plaintiff was stripped of all clothing and forced to sleep on a cold steel bed with no bedding or mattress.  He was given a small blanket to cover himself.  Jana South turned the air conditioner up so high that

Plaintiff's feet and body developed blisters from the cold air. *Id*. at 13-14. Meanwhile, she continued to taunt Plaintiff and read his medical records aloud to an unknown sergeant ("Sergeant John Doe"). *Id*.

Plaintiff suffered from injuries caused by the rope during his third suicide attempt. He experienced difficulty breathing, neck pain, and trouble focusing his eyes. *Id*. at 15. Sergeant Willis, Tonya Knust, and Ms. Thompson all observed the injuries caused by the rope. He also continued to attempt suicide and to receive additional disciplinary tickets. Despite his ongoing symptoms, Plaintiff was never examined or treated by a doctor. *Id*. at 14.

The following claims arise from the above-referenced allegations: (1) **Count 3:** Eighth Amendment claim for intentionally disregarding a known risk of suicide against Defendants Jordin, Willborne, Horman, McClure, Young, and South; (2) **Count 4:** Eighth Amendment claim for subjecting Plaintiff to unconstitutional conditions of confinement against Defendant South; (3) **Count 5:** Eighth Amendment deliberate indifference to medical needs claim against Sergeant Willis, Tonya Knust, and Ms. Thompson for failing to treat the injuries Plaintiff sustained during his suicide attempts.

## Count 3 – Intentional Disregard of Known Suicide Risk

The complaint articulates an Eighth Amendment claim for deliberate indifference to a known suicide risk (**Count 3**) against Defendants Jordin, Willborne, Horman, McClure, Young, and South. Like other Eighth Amendment claims, this type of claim has both an objective and a subjective element: (1) "the harm that befell the prisoner must be objectively, sufficiently serious and a substantial risk to his or her health or safety;" and (2) the individual defendants were "deliberately indifferent to the substantial risk to the prisoner's health and safety." *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 832

(1994)).  The Seventh Circuit has made it clear that suicide, or even attempted suicide, qualifies as a serious harm.  *Sanville v. McCaughtry*, 266 F.3d 724, 733 (7th Cir. 2001) ("It goes without saying that 'suicide is a serious harm.'").

In the case of an attempted suicide, the second objective component of an Eighth Amendment claim requires a dual showing that the defendant: (1) subjectively knew the prisoner was at substantial risk of committing suicide and (2) intentionally disregarded the risk.  *Collins*, 462 F.3d at 761 (citing *Matos ex rel. Matos v. O'Sullivan*, 335 F.3d 553, 556 (7th Cir. 2003); *Estate of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 529 (7th Cir. 2000) (defendant must be aware of the significant likelihood that an inmate may imminently seek to take his own life and must fail to take reasonable steps to prevent the inmate from performing the act)).

Count 3 shall proceed against Defendants Jordin, Willborne, Horman, McClure, Young, and South because the complaint suggests that these individuals knew that Plaintiff faced a substantial risk of suicide and disregarded the risk.  This claim shall be dismissed against all other individuals named in connection with the claim, including Willis, Knust, Thompson, Sergeant John Doe, Nurse Jane Doe, and Officer John Doe.  Plaintiff cannot proceed with the claim against Willis, Knust, and Thompson because they are not named as defendants in this action.  *See Myles*, 416 F.3d 551.  Further, the allegations do not support a claim against Sergeant John Doe, Nurse Jane Doe, and Officer John Doe because each of these defendants took steps to prevent Plaintiff from inflicting further harm to himself once they learned of his condition.  In summary, **Count 3** shall receive further review against Defendants **Jordin**, **Willborne**, **Horman**, **McClure**, **Young**, and **South** and shall be dismissed without prejudice against all remaining defendants.

## Count 4 – Conditions of Confinement

Plaintiff shall also be allowed to proceed with an Eighth Amendment claim for unconstitutional conditions of confinement (**Count 4**) against Defendant South. Prisoners have a right to "humane conditions of confinement," *Farmer*, 511 U.S. at 832, including adequate shelter and "protection from extreme cold." *Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997). In this context, the Eighth Amendment requires a plaintiff to establish that the deprivation was "sufficiently serious" and that an official's act or omission results in the "denial of the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citing *Farmer*, 511 U.S. at 834).

In the complaint, Plaintiff alleges that after being placed on suicide watch, he was required to strip. He was given one small blanket, but denied a bed, a mattress, and bedding. Defendant South was allegedly aware of these conditions, yet kept the cell house so cold that Plaintiff's skin blistered. These allegations support a claim for unconstitutional conditions of confinement against Defendant South. No other defendants are named in connection with this claim. Accordingly, **Count 4** shall proceed against Defendant **South**, and it shall be dismissed without prejudice against all other defendants.

## Count 5 – Deliberate Indifference to Medical Needs

The complaint does not support an Eighth Amendment deliberate indifference to medical needs claim (**Count 5**) against Sergeant Willis, Tonya Knust, Ms. Thompson, or anyone else. Relevant to this claim, the Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer*, 511 U.S. at 837; *see Erickson v. Pardus*, 551 U.S. 89, 94 (2006) (*per curiam*). To state a medical needs claim, a

plaintiff must show that (1) the medical condition was objectively serious, and (2) the state officials acted with deliberate indifference to his medical needs, which is a subjective standard. *Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000).

Plaintiff complains of neck pain, trouble breathing, and difficulty focusing his eyes following his third suicide attempt. Even if these conditions are sufficiently serious to support an Eighth Amendment claim, the complaint does not suggest that a defendant responded to these medical needs with deliberate indifference. Willis, Knust, and Thompson are the only individuals who are identified as having knowledge of these conditions. (Doc. 1, p. 14). But none of these individuals are named as defendants in this action, so Plaintiff cannot proceed with Count 5 against them. *Myles*, 416 F.3d 551. The complaint does not suggest that anyone else, such as a named defendant, responded to Plaintiff's medical needs with deliberate indifference. Accordingly, **Count 5** shall be dismissed without prejudice.

### 3.   <u>Grievances</u>

According to the complaint, Plaintiff filed numerous grievances with prison officials to address the false disciplinary ticket, the suicide attempts, the denial of medical care, and the conditions of his confinement. (Doc. 1, pp. 8-10, 15, 16-18). These officials include Warden Kimberly Butler, Susan Hill, Lisa Madigan, T.S. Keen, Brad Bramlett,[5] Charlette Midget, and the Administrative Review Board. Susan Hill allegedly retaliated against Plaintiff for filing grievances by granting his cellmate audio/television privileges. *Id*. at 15. Plaintiff alleges that these officials conspired to retaliate against Plaintiff by denying him due process of law and preventing him from exhausting his administrative remedies. *Id*.

The following claims arise from the above-referenced allegations: (1) **Count 6:** Fourteenth Amendment due process claim arising from the disregard, delay, or denial of

---

[5] Neither T. S. Keen nor Brad Bramlett are named as defendants in this action.

grievances; (2) **Count 7:** Fourteenth Amendment denial of access to the courts claim arising from the interference with Plaintiff's efforts to exhaust his administrative remedies prior to filing suit; (3) **Count 8:** First Amendment retaliation claim for denying Plaintiff audio/television privileges; (4) **Count 9:** common law conspiracy claim arising from the issuance of a false disciplinary ticket and interference with grievances; and (10) **Count 10:** claim against Defendants Butler, Hill, Midget, G/O Jane Doe(s), and G/O John Doe(s) for their personal involvement in violating Plaintiff's rights under the Eighth and Fourteenth Amendment, as described in Counts 1, 2, 3, and 4.

### Counts 6 & 7 – Interference with Grievances & Access to Courts

The complaint fails to articulate a viable Fourteenth Amendment due process claim (**Count 6**) or access to courts claim (**Count 7**) based on the mishandling of Plaintiff's grievances. The Seventh Circuit has flatly rejected due process claims concerning a prison's grievance process. *See Courtney v. Devore*, 595 Fed. Appx. 618, 620-21 (7th Cir. 2014) (noting that "state grievance procedures do not create substantive liberty interests protected by due process," and the "mishandling of those grievances states no claim"); *Owens v. Hinsley*, 635 F.3d 950, 953-54 (7th Cir. 2011) ("Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause. . . .").

The right to a grievance procedure is rooted in access to the courts. *See Grieveson v. Anderson*, 538 F.3d 763, 772 n. 3 (7th Cir. 2008). The "procedural right" concerning the handling of grievances exists "to ensure that prisoners and detainees can access the courts." *Id*. In this case, Plaintiff cannot show that his access to the courts was blocked by the mishandling of grievances, where he was able to file this lawsuit well within the applicable statute of limitations

period.  Even if he was, prison remedies are deemed exhausted where "prison officials were responsible for the mishandling of [a prisoner's] grievance." *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

Given the controlling law on both issues, the Court shall dismiss **Counts 6** and **7** with prejudice.

### Count 8 – Retaliation

The complaint does not support a First Amendment retaliation claim (**Count 8**), or any other claim, based on the denial of audio/television privileges.  According to the complaint, Defendant Hill denied Plaintiff's request for these privileges in retaliation against him for filing grievances.  The allegations offered in support of this claim are simply too vague and conclusory to satisfy basic pleading standards.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (requiring plaintiff to plead "enough facts to state a claim to relief that is plausible on its face").   Accordingly, **Count 8** shall be dismissed without prejudice.

### Count 9 – Conspiracy

The complaint does not articulate a viable conspiracy claim (**Count 9**) against the defendants.  Plaintiff's conspiracy claim takes two different forms.  First, he alleges that the various prison officials conspired to deny him due process by ignoring, delaying, or denying his grievances.  (Doc. 1, pp. 9-10).  As already explained, the complaint supports no underlying Fourteenth Amendment due process or First Amendment access to courts claim based on the mishandling of grievances.  And conspiracy is not an independent basis of liability in § 1983 actions. *See Smith v. Gomez,* 550 F.3d 613, 617 (7th Cir. 2008); *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000).  "There is no constitutional violation in conspiring to cover-up an action which does not itself violate the Constitution."  *Hill v. Shobe*, 93 F.3d 418, 422

(7th Cir. 1996).   Therefore, Plaintiff's first conspiracy claim shall be dismissed on this basis. *See also Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (plaintiff's argument that conspiracy by prison officials to deny administrative review of his grievances by dismissing them was frivolous where plaintiff had access to the grievance procedure but did not obtain the outcome he desired).

Plaintiff also alleges that Defendants Spiller and Ramon framed Plaintiff for possession of contraband.   The allegations are conclusory.   They do not support a conspiracy claim against either of these defendants.   *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) ("in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements").   In addition, the claim defies common sense, particularly where the allegations make it clear that *both* Plaintiff and his cellmate received a disciplinary ticket for possession of the contraband, and Defendant Spiller and Ramon's involvement in this matter ended after the issuance of the disciplinary tickets to both.

Under the circumstances, Plaintiff's conspiracy claims in **Count 9** shall be dismissed without prejudice.

### Count 10 – Grievance Officials

At this early stage in litigation, the Court will allow Plaintiff to proceed with a claim against Defendants Butler, Hill, Midget, G/O Jane Doe(s), and G/O John Doe(s) for their personal involvement in violating Plaintiff's rights under the Eighth and Fourteenth Amendments, as described in Counts 1, 2, 3, and 4 (**Count 10**).   The complaint generally alleges that these defendants received grievances from Plaintiff complaining of on-going discrimination, suicidal thoughts, plans to commit suicide, and unconstitutional conditions

of confinement, but these defendants took no action to stop the violations of his constitutional rights.

A government official "is only liable for his or her own misconduct." *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015) (citation omitted). This means that in order to recover damages against a prison official acting in a supervisory role, a § 1983 plaintiff may not rely on a theory of *respondeat superior*. *Id*. He must demonstrate that "the defendant, through his or her own conduct," violated the Constitution. *Id*. (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). The factors that are necessary to establish a § 1983 violation against a prison official depend on the constitutional provision at issue and include the state of mind required to establish a violation of the provision. *See id*. Each of these factors is addressed above, in the context of the discussions regarding Counts 1, 2, 3, and 4.

Plaintiff alleges that Defendants Butler, Hill, Midget, G/O Jane Doe(s), and G/O John Doe(s) each received detailed grievances describing on-going constitutional violations. However, they failed to exercise their authority to intervene on Plaintiff's behalf and rectify the situation. The allegations, in this particular case, suggest that these defendants may have approved of or "turned a blind eye" to the on-going constitutional violations, giving rise to a claim based on personal participation in the constitutional violation. *Perez*, 792 F.3d at 782 (citing *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). Accordingly, **Count 10** shall proceed against Defendants **Butler**, **Hill**, **Midget**, **G/O Jane Doe(s)**, and **G/O John Doe(s)**. However, the claim shall be dismissed without prejudice against all other defendants.

## Identification of Unknown Defendants

Plaintiff shall be allowed to proceed with Count 10 against Defendants G/O Jane Doe(s) and G/O John Doe(s). However, these parties must be identified with particularity before service

of the complaint can be made on them. Where a prisoner's complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). In this case, Warden Butler, who is already named as a defendant in this action, shall be responsible for responding to discovery aimed at identifying these unknown defendants. Guidelines for discovery will be set by the United States Magistrate Judge. Once the names of the defendants are discovered, Plaintiff shall file a motion to substitute each newly identified defendant in place of the generic designations in the case caption and throughout the complaint.

## Pending Motions

**1.      Motion to Appoint Counsel (Doc. 3)**

Plaintiff filed a motion to appoint counsel, which shall be **REFERRED** to a United States Magistrate Judge for a decision.

**2.      Motion for Preservation of Appeal (Doc. 6)**

Plaintiff also filed a "motion for preservation of appeal," in which he: (1) seeks confirmation that the complaint was served on the defendants; (2) objects to the belated responses he received to several grievances; and (3) indicates that a Menard official recently told Plaintiff that he has political "ties" to United States Magistrate Judge Stephen C. Williams. Plaintiff seeks to "preserve" all of these "claims" for appeal.

Plaintiff's motion is **DENIED**. There is no appeal pending at this time. This case is in its infancy. This Order constitutes the Court's preliminary review of the complaint under 28 U.S.C. § 1915A. The defendants against whom Plaintiff has stated claims will be served after

this Order is entered.  It is unnecessary, in the meantime, to file motions expressing concerns about belated grievances or comments made by members of the prison staff.  Should Plaintiff seek recusal of this Judge or a United States Magistrate Judge from this case, he must do so by filing a "Motion for Recusal" with the Court.

**Disposition**

The **CLERK** is hereby **DIRECTED** to alter the spelling of Defendant "Sammauel" to "**Sammuel**;" Defendant "John Doe Medical Staff Doctor" to "**Dr. John Doe**;" Defendant "Jane Doe Medical Staff Doctor" to "**Dr. Jane Doe**;" and "John or Jane Doe Grievance Officers" to "**G/O John Doe**" and "**G/O Jane Doe**."

**IT IS HEREBY ORDERED** that **COUNTS 5, 8,** and **9** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.  **COUNTS 6** and **7** are **DISMISSED** with prejudice for the same reason.

**IT IS ALSO ORDERED** that Defendants **DUNBAR, SPILLER, HOFF, DR. JOHN DOE, DR. JANE DOE,** and **MENARD EMPLOYEES** are **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that with regard to **COUNTS 1, 2, 3, 4,** and **10**, the Clerk of Court shall prepare for Defendants **KIMBERLY BUTLER, LT. WILLBORNE, KENTE BROOKMAN, C. McCLURE, SAMMUEL, RAMON, YOUNG, SUSAN HILL, JORDIN, HORMAN, JANA SOUTH,** and **CHARLOTTE MIDGET**:  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service

on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that service shall not be made on Defendants G/O John Doe(s) or G/O Jane Doe(s) until such time as Plaintiff has identified them by name in a properly filed motion for substitution.  Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

**IT IS ALSO ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service.   Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Stephen C. Williams** for further pre-trial proceedings, including a decision on

Plaintiff's motion to appoint counsel (Doc. 3) and expedited discovery aimed at identifying Defendants G/O John Doe(s) and G/O Jane Doe(s).

Further, this entire matter is **REFERRED** to United States Magistrate Judge **Williams** for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: October 28, 2015**

<u>s/ MICHAEL J. REAGAN</u>
**U.S. District Judge**