IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

STEVEN D. LISLE, #R40159,              )
                                       )
        Plaintiff,                     )
                                       )
    - vs-                              )    No. 15-965-MJR-SCW
                                       )
KIMBERLY BUTLER, et al.,               )
                                       )
        Defendants.                    )

## DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT [d/e 1] AND JURY DEMAND

NOW COME the Defendants, LINDA CARTER and MARVIN BOCHANTIN, by and through their attorney, Lisa Madigan, Attorney General for the State of Illinois, and hereby file their Answer and Affirmative Defenses to Plaintiff's Complaint [d/e 1], and in support thereof, state as follows:

### JURISDICTION & VENUE

1.    This is a civil action authorized by 42 U.S.C. Section 1983 to redress the deprivation, under color of state law of rights secured by the constitution of the United States. The court has jurisdiction under 28 U.S.C. Section 1331 and 1343 (a)(3)  The United States District Court for the Southern District of Illinois is an appropriate venue under 28 U.S.C. Section 1391(b)(2) because it is where the events giving rise to this claim occurred.

**ANSWER:    Defendants admit jurisdiction and venue are proper.  Defendants deny any deprivation of Plaintiff's rights.**

<u>PLAINTIFFS</u>

2.      Plaintiff, Steven D. Lisle is and was at all times mentioned here in a prisoner of the State of Illinois in the custody of the Illinois Department of Corrections.  He is currently confined in Pontiac Correctional Center in Pontiac Illinois.

**ANSWER:    Defendants admit the allegations in this paragraph.**

| 3.  | <u>DEFENDANTS</u> | Position/Title |
|-----|-------------------|----------------|
| A.  | Kimberly Butler   | Warden |
| B.  | Willborne         | Luietenent (sic) |
| C.  | Kente Brookman    | Chairperson of Adjustment Committee |
| D.  | Dunbar            | Correctional Employee |
| E.  | McClure           | Correctional Employee |
| F.  | Sammauel          | Luietenent (sic) |
| G.  | Spiller           | Internal Affairs |
| H.  | Ramon             | Correctional Employee |
| I.  | Young             | Correctional Employee |
| J.  | Susan Hill        | Counselor |
| K.  | Hoff              | Internal Affairs |
| L.  | Jordin            | Medical Staff |
| M.  | Horman            | Medical Staff |
| N.  | John Doe          | Medical Staff-Doctor |
| O.  | Jane Doe          | Medical Staff-Doctor |
| P.  | John or Jane Doe  | Grievance Officers |

| | | |
|---|---|---|
| Q. | Menard Employees | Medical Care |
| R. | Jane South | Medical Staff |
| S. | Charlette Midget | Medical Staff |

East (sic) defendant is sued individually and in his or her official capacity at all times mentioned in this complaint each defendant acted under the color of state law.

Employers name and address of Defendant(s) stated above

711 Kaskaskia Street Menard Correctional Center Menard, IL  62259

| DEFENDANTS | Position/Title |
|---|---|
| T.    T.S. Keen | Office of Inmate Issues |
| U.    Administrative Review Board- Office Inmate Issues | |

Employers name and address of Defendant state above

East (sic) Defendant is sued individually and in his or her official capacity at all times mentioned in this complaint defendant acted under the color of state law

1301 Concordia Court Springfield, Illinois  62794-9277

**ANSWER:  Defendants admit they acted under color of state law while working for IDOC at the times relevant, but deny they are either correctly sued in their official or liable in their individual capacities.**

## PREVIOUS LAWSUITS

4.      Have you begun any other lawsuits in state or federal court relating to your imprisonment

No

**ANSWER:    Defendants lack knowledge sufficient to form a belief about the truth of the statements in this paragraph.**

FACTS

5.     On 8-12-14 at Menard Correctional Center inmate Lisle was returning from the institution gym, upon arriving in front of the East House while in the inmate line formation that all inmates have to walk in pairs of (two's) Lisle saw internal affairs (officer Spiller) leaving out the East House walking and holding a clear test tube in his hand.  Lisle saw the test tube filled with a light yellow liquid substance.

**ANSWER:     Defendants lack knowledge sufficient to form a belief about the truth of what Plaintiff says he saw, and whether Plaintiff was leaving the gym.**

At this time Lisle ask Spiller what was the substance he had in the tube.  Spiller replied in a "joking" manner why it isn't your is it.  Lisle stated not at all!  Do (sic) to Lisle having a well known history as being employed as a jaintor (sic) in Menard facility he has a good relationship with most correctional officers which is why Lisle spoke to Spiller.

**ANSWER:     Defendants lack knowledge sufficient to form a belief about the truth of whether Plaintiff interacted with Officer Spiller.**

After arriving in the East House, while walking past the officer cage Lisle saw a clear bag with an orange liquid substance with a string tied around the top of the bag.  From the bag's positon it appeared the bag was never opened.  Lisle then arrived at this cell located at 6-25 at this time Lisle saw that his cell light was on and his cell had been "ramsack"

**ANSWER:     Defendants lack knowledge sufficient to form a belief about what Plaintiff saw or what his perceptions were.  Defendants admit Plaintiff was assigned to cell 625 in the East House on August 12, 2014.**

Upon entering his cell he "noticed" his Cellmate (Brian Thurman #M37119) who is a white male inmate who also resided in cell 6-25 property box was missing from the cell.  After about

two minutes had passed Lisle "notice" that his Cellmate Thurman had not arrived at the cell this made Lisle look down the gallery to see why his cellmate had not arrived at the cell.

**ANSWER:    Defendants admit Brian Thurman was Plaintiff's cellmate on August 12, 2014, and lived in cell 625, but lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in the above paragraph.**

Do (sic) to security reason's enforced by the correctional institution inmates are "required" to close their cell doors by the time correctional officers arrived to make sure all inmates cell's doors were secured and in their proper cell location.

**ANSWER:    Defendants lack knowledge sufficient to form a belief about the allegations in this paragraph because protocol differs depending on the situation.**

Lisle saw his Cellmate Thurman at the end of the gallery next to correctional officers.

**ANSWER:    Defendants lack knowledge sufficient to form a belief about the truth of what Plaintiff says he saw.**

After (Ramon) who was assigned to guard 6 gallery secured all cell's and arrived at Lisle cell location and closed the door.

**ANSWER:    Defendants lack knowledge sufficient to form a belief about the truth of the allegations.**

Then dead locking Lisle door he advised Lisle that his cellmate Thurman had "refused" to lock up and that he found contraband in both inmates cell and that he will be issuing a disciplinary report.  Ramon returned back to Lisle cell shortly and advised Lisle to pack his property and he was going to segregation.  Lisle then asked officer Ramon why he was going to the segregation unit?  He then replied that he found contraband in Thurman property box which internal affairs

advised him he tested and determined it to be 7% alchol (sic) Lisle informed Ramon that he should talk to Thurman Lisle cellmate.  Because the contraband belong to Thurman

**ANSWER:   Defendants lack knowledge sufficient to form a belief about the truth of the allegations contained this paragraph.**

As Lisle and Ramon walk down the stairs they encountered inmate Thurman Lisle advised him to take his weight "meaning" responsibility for contraband who then "stated" in front of the (L.T. Sammuel) that it was his contraband and he's going to take responsibility for the contraband.

**ANSWER:   Defendants lack knowledge sufficient to form a belief about the truth of the allegations in this paragraph.**

L.T. Sammuel then told Ramon to take Thurman back to the cell at this time Lisle heard (officers) in the cage talking "loud" in which a statement was made take that hole some "whiteman" back to his cell and get that "Coon" out my cell house and to segregation where he belong.

**ANSWER:   Defendants lack knowledge sufficient to form a belief about the truth of the allegations in this paragraph.**

L.T. Sammuel stated to Lisle as he walk him to the segregation unit that he had to inform internal affairs that Thurman stated the contraband was his.

**ANSWER:   Defendants lack knowledge sufficient to form a belief about the truth of the allegations in this paragraph.**

Lisle saw that Thurman was not being brought to segregation this violated Lisle equal protection and was part of the indifference treatment by Lisle being took to segregation and Thurman was not do (sic) to him being white.

**ANSWER:    Defendants lack knowledge sufficient to form a belief about the truth of what Plaintiff alleges he saw.  Defendants deny treating Plaintiff and Thurman differently because of their races, and deny any act constituted a violation of the constitution's guarantee of equal protection under the laws, and deny violating Plaintiff's rights whatsoever.**

Lisle was then confined and housed at the North II Segregation unit.

**ANSWER:    Defendants admit Plaintiff was taken to North II Segregation.**

Later that evening Lisle received a Disciplinary Report by (Officer Dunbar).  Lisle then informed Dunbar that he wanted to sign the Disciplinary Report, so he could put L.T. Sammuel down as a witness who would testify Thurman stated that his contraband was his.  Dunbar refused to let Lisle use his pen to sign the disciplinary report.  This violated Lisle due process rights.

**ANSWER:    Defendants admit Plaintiff was served a disciplinary ticket on August 12, 2014, by Officer Dunbar, but deny Plaintiff wanted to sign the ticket because he refused to sign the ticket.  Defendants deny Plaintiff made a timely attempt to call witnesses to the Adjustment Committee Hearing.  Defendants deny Plaintiff was entitled to due process, deny any action constituted a violation of Plaintiff's rights to due process and that they violated Plaintiff's rights whatsoever.**

By Lisle being confined in segregation and deprived of all his "property" and not allowed a pen in which the administration of Menard knows an inmate will need to sign his ticket as well include witnesses if he choses this is the indifference that denies Lisle his equal protection and due process which allows him to call witnesses in his disciplinary proceedings.

**ANSWER:    Defendants deny Plaintiff was unable to sign the discipline ticket because he lacked a pen.  Defendants deny Plaintiff's rights were violated by Plaintiff's failure to make a timely request for witnesses or his refusal to sign the ticket.  Defendants**

**deny Plaintiff was entitled to due process, deny that any action violated due process, and deny violating his rights whatsoever.**

Lisle then advised Dunbar to "notify" the (North II Sgt.) so Lisle could inform him that he wanted to call L.T. Sammuel as a witness.

**ANSWER:    Defendants deny this is the proper procedure for requesting witnesses at an Adjustment Committee Hearing, but lack knowledge sufficient to form a belief about the truth of what Plaintiff told Officer Dunbar.**

The following day Lisle was visited by his (Counselor Tony Knust) during her routine check Lisle informed her that he wanted to speak to Internal Affairs and that he wanted L.T. Sammuel called as a witness do (sic) to Dunbar refusing to let Lisle use his pen to add L.T. Sammuel as a "witness" on his disciplinary report.  Tonya Knust did inform internal affairs.

**ANSWER:    Defendants lack knowledge sufficient to form a belief about the truth of the allegations in this paragraph.**

Lisle was visited that night by internal affairs (officer Hoff) Lisle advised him that he wanted LT. Sammuel called as a witness do (sic) to Dunbar refusing to let him use his pen to add L.T. Sammuel as a "witness" on his disciplinary report.  And that he has a due process right to call witnesses in his disciplinary proceedings.  Hoff advised Lisle that he would "notify" the adjustment committee to call Lisle witness by Hoff failure to inform the adjustment committee after Lisle made him aware of his due process right.  Hoff "knew" he would be dening (sic) Lisle his due process right.  This made Hoff liable by "knowing" if he did not inform the adjustment committee of Lisle witness it would denie (sic) his due process.

**ANSWER:    Defendants lack knowledge sufficient to form a belief about the truth of whether Officer Hoff visited Plaintiff, and what any alleged conversation would have been**

**about.  Defendants deny Plaintiff was entitled to due process protections, deny their actions violated due process, and deny violating Plaintiff's rights whatsoever.**

The next day Lisle was called to the adjustment committee to hear his disciplinary ticket.

**ANSWER:    Defendants deny Plaintiff's Adjustment Committee Hearing took place on August 15, 2014.**

Lisle advised (L.T.Brookman) the chairman that he requested L.T. Sammuel to be called as a witness and that do (sic) to Dunbar "refusing" to let Lisle use his pen to add L.T. Sammuel as a witness on his disciplinary report.  Lisle made all the necessary steps to notify the adjustment committee by informing Dunbar –Tony Knust –Hoff that he requested L.T. Sammuel as a witness. Lisle then plead not guilty and informed L.T. Brookman that the contraband was found in his cellmate Thurman legal box and that Thurman informed L.T.Sammuel that the contraband was his.  And that he requested L.T. Sammuel to be called as a witness and that he would testify to this account that Thurman "advised" him that the contraband was his.

**ANSWER:    Defendants lack knowledge sufficient to form a belief about the truth of the allegations in the above paragraph.**

L.T. Brookman then stated he would call L.T. Sammuel as a witness and that if Thurman takes responsibility for the contraband Lisle would be released from segregation and if Thurman does not take responsibility for the contraband.  He will convict and sentence both inmates Lisle and Thurman to 4 months in segregation.

**ANSWER:    Defendants lack knowledge sufficient to form a belief about the truth of the allegations.**

"How ever" Thurman was never sent to segregation and by holding allegation that black prisoner was placed in solitary while a white prisoner who engaged in the same conduct was not states an equal protection claim.

**ANSWER:   Defendants lack knowledge sufficient to form a belief about whether Thurman went to segregation, but deny Plaintiff's race had anything to do with the outcome. Defendants deny Plaintiff's right to equal protection under the laws has been violated and that they violated Plaintiff's rights whatsoever.**

All inmates in Menard are mostly African-Americans who caught the same disciplinary charges as Lisle who has a cellmate both inmates are issued a disciplinary report and at the adjustment committee if both cell mates plead not guilty both inmates are found guilty or not guilty in their disciplinary hearing.

**ANSWER: Defendants deny the allegations in this paragraph.**

Lisle plead not guilty and do (sic) to Thurman being white he was not found guilty where the contraband was found in his box review all Menard disciplinary reports all african-americans who plead not guilty are both convicted and sent to segregation or released from segregation.

**ANSWER:   Defendants admit Thurman is a white man.   Defendants deny the remaining allegations in this paragraph.**

By Thurman being white and not found guilty and sent to segregation like Lisle who plead not guilty was discrimination and the indifference Lisle received his summary from the adjustment committee and it stated no "witness" requested which was false and denied Lisle due process where it a clear fact Lisle requested a witness who is L.T. Sammuel and by L.T. Brookman being aware and knowing that Lisle requested a witness and "concealing" the adjustment committee summary report to state Lisle requested no "witness" denied Lisle his due process right.

**ANSWER:  Defendants admit Thurman is a white male.  Defendants deny Plaintiff and Thurman were treated differently because of their race.  Defendants deny plaintiff made a timely request of a necessary witness.  Defendants admit the Adjustment Committee Final Summary states Plaintiff requested no witnesses.  Defendants deny Plaintiff was owed due process protection, deny his due process rights were violated and deny violating Plaintiff's rights whatsoever.**

Lisle was then housed on 8 gallery in the north II segregation unit and housed with inmate (Jason Holmes #B38488) who also had the same disciplinary report as Lisle inmate Holmes who is african american (sic) plead not guilty to his disciplinary charges and his cellmate he was housed with in the North #7 unit was also issued a disciplinary report and plead not guilty and both inmates was found guilty.  See Exhibit 17

**ANSWER:  Defendants admit plaintiff was housed on 8 gallery in North II Cell house in September of 2014, but lack knowledge sufficient to form a belief about the truth of who he was housed with as Plaintiff fails to indicate dates.  Defendants lack knowledge sufficient to form a belief about the truth of the allegations regarding the disciplinary report Plaintiff says his cellmate received.**

This again shows the indifference in african american (sic) inmates who plead not guilty to the same disciplinary report were found guilty and in Lisle case he plead not guilty and was converted and sentenced to segregation and his cellmate Thurman was not convicted or sentence to segregation do (sic) to him being white is clearly discrimination and indifference in the treatment of african american (sic) inmates which violates equal protection which protects Lisle from discrimination.

**ANSWER:   Defendants deny any outcome of Plaintiff's ticket on August 12, 2014, and the ticket Thurman received had anything to do with the race of either inmate. Defendants deny Plaintiff's rights to equal protection under the laws have been violated.**

Do (sic) to Lilse being denied his due process and equal protection rights caused aggravated conditions that were atypical and significant Lisle to have a mental breakdown where he was sentenced to 4 months segregation and 6 months contact visit denial and other general prison privledges (sic) like phone calls etc.

**ANSWER:   Defendants lack knowledge sufficient to form a belief about the truth of whether Plaintiff felt as he said he did.   Defendants admit Plaintiff received four months of segregation and six months of contact visit restrictions from his August 12, 2014, ticket. Defendants deny this was atypical or significant.  Defendants deny Plaintiff was entitled to due process protection, deny due process was violated, deny Plaintiff's equal protection rights were violated, and deny they violated Plaintiff's rights whatsoever.**

Lisle filed a grievance about his disciplinary report and proceedings.  Menard institution "refused" to answer Lisle grievances Lisle continued to complain and file grievances.  Lisle then received a grievance that he filed through the institution mail from (Warden Kimberly Butler) which stated Lisle has to resummit (sic) his grievance do (sic) to his grievance not being an "emergency grievance.  In which Lisle did not sign an X to turn his grievance in as an emergency. By Warden Butler forging an X on Lisle grievance denied his equal protection and due process. This made Warden Butler liable to violate Lisle due process where Butler knew by forging an X on Lisle grievance would stop his grievance process.  See <u>Exhibit 1 and 2</u>

**ANSWER:   Defendants lack knowledge sufficient to form a belief about the truth of the allegations since Plaintiff has filed many grievances and he does not refer to a specific**

**grievance.  Defendants deny engaging in forgery on any grievance.  Defendants deny "forging an X" on a grievance is a denial of due process or equal protection.  Defendants deny plaintiff was entitled to due process in his grievance.  Defendants deny violating Plaintiff's rights whatsoever.**

Lisle will request a pen expert to conduct a test which will show that the forged X on his grievance is Warden Butler signature where the X is signed is the same ink from Butler pen.

**ANSWER:    Defendants lack knowledge sufficient to form a belief about the truth of what witnesses Plaintiff will request and what their testimony will show.**

Lisle then wrote Lisa Madigan and filed a complaint about Menard institution "destroying" Lisle grievances.  Lisle then sent the grievance to Springfield and advised the administration review board that Warden Butler forged an X on my grievance and that its impossible to Lisle to exhaust his institution grievance remedies where Menard institution is destroying and forging inmate grievances Lisle also advised the administrative review board that he resummitted (sic) the grievance again that Warden Butler forges as well sent the actual grievance that Warden Butler forged to have copies made and used as evidence.

**ANSWER:    Defendants lack knowledge sufficient to form a belief about the truth of whether Plaintiff wrote Lisa Madigan.  Defendants lack knowledge sufficient to form a belief about the truth of what Plaintiff sent to the Administrative Review Board ("ARB") since Plaintiff has sent several grievances to the ARB and he doesn't specify.**

After Lisle made the administrative review board aware of Menard institution denying him his constitutional right and by T.S. Keen not "contacting" Menard institution as well advising Menard institution of Lisle complaint and to properly address his grievances made T.S. Keen liable in conspiracy to aid Menard institution to continue to denie (sic) Lisle due process through his

grievance process where T.S. Keen stated in her response to Lisle complaint about Menard institution forging and destroying his grievance "to follow grievance process.  By Lisle informing T.S. Keen he is to follow the grievance process but Menard institution is denying him his process to grievance procedure and by T.S. Keen not contacting Warden Butler or Menard institution informing them that Lisle states he trying to follow his grievance process but he states Menard institution is denying him that right is a "conspired" act to let Menard institution continue to denie (sic) Lisle due process right to follow the grievance process.

**ANSWER:   Defendants deny Plaintiff has a constitutional right to have his grievances answered. Defendants lack knowledge sufficient to form a belief about the truth of what actions Thomas Keen has taken since Plaintiff does not specify which grievance he is talking about. Defendants deny any conspiracy. Defendants deny Plaintiff was due any process.  Defendants deny Plaintiff's due process rights were violated.  Defendants deny they violated Plaintiff's rights whatsoever.**

By T.S. Keen "overseeing" the grievance process conducted at Menard institution and not taking action or informing Menard institution of Lisle complaint makes her a conspiring party to also denie (sic) Lisle his due process and equal protection of laws.  See Exhibit 2  The denial of all due process and equal protection claims Lisle has stated caused him to have a mental breakdown which forced him to try to kill his self.

**ANSWER:   Defendants deny Thomas Keen oversees the grievances process at Menard Correctional Center. Defendants deny any conspiracy whatsoever.  Defendants deny Plaintiff's due process rights or equal protection rights have been violated whatsoever. Defendants lack knowledge sufficient to form a belief about the allegations Plaintiff makes about his mental state.**

Lisle also advised the administrative review board that he was going to kill his self.  See

Exhibit 2  By T. S. Keen not "alerting" any one or Menard institution of Lisle suicide attempt made

her liable to Lisle pain, suffering and risk of death constituted "irreparable" harm.

**ANSWER:     Defendants deny anything in Exhibit 2 to Plaintiff's Complaint would**

**have put the ARB on notice Plaintiff was a danger to himself.  Defendants deny they failed**

**to take any action they should have.  Defendants deny Thomas Keen is liable for a suicide**

**attempt.**

On 9-3-14 3rd shift medical assistance (Jordin) conducted her medical rounds on 8 gallery

in the North II segregation unit with (L.T. Willborne) who at this time was the 3rd shift night Sgt.

who walk up on inmate Lisle cell and witness him trying to commit suicide where Lisle was

hanging from shoestrings made into a rope as he was hanging from the jail house made rope is

caused his hands to hang out his cell from strangulation.

**ANSWER:     Defendants lack knowledge sufficient to form a belief about the truth**

**of the allegations in this paragraph.**

At his time nurse Jordin stop in front of Lisle cell and told him to put his hands back in the

bars in which a suicide note was in Lisle hands after the jail house made rope snaped (sic) Lisle

fail (sic) to the floor Lisle advise her to take his suicide note Jordin and Wilborne walk off without

getting Lisle a crisis team or medical help this went against Menard policy were (sic) it states any

employee is to alert mental health when it is plain that a inmate is in need of help.  See Exhibit 18.

**ANSWER:     Defendants lack knowledge sufficient to form a belief about the truth**

**of the allegations in this complaint.**

This made Jordin and Wilborne liable to violating Lisle Constitutional rights to medical

care which was cruel and unusual punishment.  Lisle suicide attempt was a serious medical need

which even a lay person could see Lisle had a serious medical need.  By Wilborne and Jordin

failure to recognize legitimate threats of "suicide" and refusing and failing to get Lisle medical

help when requested is the deliberate indifference to risk that Lisle would attempt suicide.

**ANSWER: Defendants lack knowledge sufficient to form a belief about what Reeves**

**(sued as "Jordin") and Wilborn perceived or whether Plaintiff made legitimate threats of**

**suicide, but denies violating Plaintiff's rights whatsoever.**

On 9-4-14 Lisle gave 2nd shift medical assistance (Horman) a suicide note (Officer

McClure) was also present and heard Lisle state to medical nurse Horman that he is suicidal and

he is fent (?sic) to kill his self Lisle then took a jail house shoestring made into a rope and attempted

for the 2nd time to kill his self.  Jordin and McClure walked off.  The jail house rope again snaped

(sic).  This made Horman and McClure liable to violating Lisle Constitutional rights to medical

care which was cruel and unusual punishment Lisle 2nd suicide attempt was a serious medical need

which  even a lay person could see Lisle had a serious medical need.  By Horman and McClure

failure to recognize legitimate threats of "suicide" and refusing and failing to get Lisle medical

help when requested is the deliberate indifference to risk that Lisle would attempt suicide.  This

also went against Menard policy to alert mental health when it is plain to see Lisle needed medical

care which are all Menard employee duty.  See Exhibit 18.  By Lisle continuing to being denied a

crisis team or medical help made him continue to hurt his self.

**ANSWER:  Defendants lacks knowledge sufficient to form a belief about the truth of**

**the allegations, but denies violating Plaintiff's rights whatsoever.**

On 9-5-14 Lisle gave a suicide note to his gallery (Officer Young) and informed him that

he will attempt to kill his self again for the 3rd time.  Young failed to get Lisle medical care or a

crisis team or alert mental health this violated Menard policies were (sic) all employees are to alert

mental health when a inmate is in need.  See Exhibit 18.  This made Young liable to violating Lisle Constitutional rights to medical care which was cruel and unusual punishment.  Lisle notice of a suicide attempt was a serious medical need.  By Young failure to recognize legitimate threats of "suicide" and refusing and failing to get Lisle medical help when requested is the deliberate indifference to risk that Lisle would attempt suicide.

**ANSWER:   Defendants lack knowledge sufficient to form a belief about the truth of these allegations, but denies violating Plaintiff's rights whatsoever.**

Later that night on 9-5-14 Lisle carried out his plot to commit suicide.  During 2nd shift medical assistance (Jan Doe) conducted her medical rounds and found Lisle hanging from a jailhouse made rope with his hands behind his back tied up with shoe strings so that he couldn't stop his self from committing suicide.  This Jan Doe screamed for help and began to try to snatch the jail house rope off Lisle neck at this time Lisle cellmate (Jason Holman #B38488) woke up out his sleep to find his cellmate Lisle hanging from a jail house rope and after Jan Doe informed inmate Holman to grab Lisle feet and hold him up to keep Lisle from strangling his self Holman held up Lisle feet.  See Exhibit 19  Jan Doe keep pulling the jail house rope off Lisle neck which caused Lisle neck to have more problems breathing and "pain" which caused the rope altecerations (sic) to dig deeper and more "pain" at this time Lisle was took to the North II Segegation which medical assistance observed Lisle and (John Doe) requested that Lisle go to Menard healthcare unit for further observations by (Doctor) because of Lisle breathing eyes rolling and damage from the jail house rope.

**ANSWER:   Defendants admit there was an incident on September 5, 2014, where Plaintiff was found with shoestrings around his neck based on a review of records, but deny**

**any of them were present.  Defendants lack knowledge sufficient to form a belief about the
truth of remaining allegations in this statement.**

As Lisle arrived at the Menard healthcare do (sic) to no "certified" Doctor being available
Lisle was seen by a medical assistance who is not a certified Doctor (Jana South) who was abusive
to Lisle and stated to Lisle you suck you tryed (sic) three times to kill yourself and you should
have killed yourself the right way the first time.  This continued for the next couple of days Lisle
was targeted and "taunted" by Jana South.  Next Jana South began to read my medical file out loud
to a 3rd shift night Sgt. (John Doe) which violated my privacy to medical care Lisle was target by
nurse Jana South hold turnt (sic) up the air conditioner to freeze Lisle which caused him to get
blisters on his feet.

**ANSWER:   Defendants admit Plaintiff was taken to the Health Care Unit.
Defendants lack knowledge sufficient to form a belief about the truth of the alleged
interactions between Defendant South and the John Does and Plaintiff.  Defendants deny
violating any of Plaintiff's rights whatsoever.**

(Menard employees) strip Lisle naket (sic) and gave him just a small blanket and Lisle was
force to sleep on cold steel without any proper beding (sic) mattress do (sic) to this it caused Lisle
body to get "painful" blisters which caused "pain" this violated Lisle constitutional rights and was
cruel and unusual punishment do (sic) to the way Lisle was keep on suicide watch it should be
noted that Menard correctional center has change its policy and now gives suicide watch inmates
a blanket and suicide jacket and suicide bedding mattress.  But at the time Lisle was on suicide
watch he was not giving the extra jacket and bedding which shows Lisle was mistreated and cold
tempture (sic) and no proper clothing or bedding caused him pain and suffering and blisters which
injuried (sic) his body.  See Exhibit 8

**ANSWER:    Defendants lack knowledge sufficient to form a belief about the truth of the alleged conditions Plaintiff describes.  Defendants deny the protocol for an inmate on suicide watch violates Plaintiff's rights.  Defendants deny they put the Plaintiff on suicide watch.  Defendants deny violating any of Plaintiff's rights whatsoever.**

This made Jana South and Menard employees liable to violating Lisle constitutional rights which were cruel and unusual punishment and the indifference was Jana South conduct toward Lisle and Menard employees failure to provide Lisle adequate medical care to bedding and clothing on suicide watch which Menard employees now provide inmates adequate bedding and clothing while on suicide watch is the difference that Lisle was not provided while on suicide watch.

**ANSWER:    Defendants lack knowledge sufficient to form a belief about the truth of Plaintiff's allegations about Defendant South.  Defendants deny they failed to provide adequate medical care or bedding and clothing on suicide watch.  Defendants deny violating Plaintiff's rights whatsoever.**

Lisle was never reviewed by any Certified medical Doctor for his injuries which Menard employee and medical unit was liable for not providing Lisle to be seen by a Certified Doctors for his injuries which inmate Holman witness Lisle bruise on his body and poor health See <u>Exhibit 19</u> also See <u>Exhibit 10</u>

**ANSWER: Defendants lack knowledge sufficient to form a belief about the truth of the allegations regarding Plaintiff's medical care, but deny ever being aware of Plaintiff failing to receive adequate care.**

were (sic) Lisle informed Menard employees that (Sgt. Willis) mental health  (Ms. Thompson) and Counselor (Tonya Knust) saw the damage of Lisle body from the jail house rope.

Lisle denial of medical care was cruel and unusual punishment which denied his constitutional rights.

**ANSWER:    Defendants lack knowledge sufficient to form a belief about the truth of the allegations in this statement.**

This made Menard employees and healthcare liable for failure to provide Lisle medical attention by a Doctor where his injuries were a serious medical need the indifference is Lisle was denied proper medical attention and to be reviewed by a train certified Doctor who could properly review Lisle injuries do (sic) to Lisle not being reviewed Lisle continued to suffer and have pain were (sic) his breathing was bad and his eye focusing was bad damage to his neck which caused pain and Lisle has since lost a few of his memories.  See Exhibit 10

**ANSWER:    Defendants deny ever being aware Plaintiff was denied proper medical attention.  Defendants lack information sufficient to form a belief about the truth of the allegations regarding his medical care, or Plaintiff's alleged injuries.**

Lisle clearly informed Menard employees Lisle still hasn't received any medical attention Lisle further states do (sic) to his injuries from his suicide attempt caused him to have continued suicide attempts and psychological damage which caused him to catch a series of disciplinary reports do (sic) to his mental state after being abused and denied medical attention in his first 3 suicide attempts review

**ANSWER:    Defendants deny they were informed Plaintiff wasn't getting medical attention.  Defendants lack information sufficient to form a belief about the truth of the allegations regarding Plaintiff's alleged injuries, but deny they caused any injury.**

Lisle IDOC history it will show that Lisle has never had any suicide attempts while incarcerated at Menard Correctional Center on numerous disciplinary reports untill (sic) his first 3 suicide attempts which started 9-3-9-4-9-5-15

**ANSWER:   Defendants lack knowledge sufficient to form a belief about the truth of these allegations.**

Lisle was being targeted and retilated (sic) against for filing grievances where (Susan Hill) approved inmate Holmna who was Lisle old cellmate for approval of audio telvision (sic) privileges  See Exhibit 20

**ANSWER:   Defendants lack knowledge sufficient to form a belief about the allegations, but Defendants deny they retaliated against Plaintiff for filing grievances.**

Where Susan Hill denied Lisle his audio telvision (sic) privileges were (sic) Lisle and Holman came to the segregation unit the same day for the same disciplinary charges  See Exhibit 20 and 21

**ANSWER:   Defendants lack knowledge sufficient to form a  belief about the truth of the allegations in this paragraph.**

Menard has a history of violating inmates due process at their disciplinary hearings  See Exhibit 22  from inmate (Tiquin Clay R27703) affidavit and denial of due process by Menard employees.

**ANSWER:   Defendants lack knowledge sufficient to form a belief about the truth of any alleged history of violating due process, but deny they violated Plaintiff's due process rights or any rights whatsoever.**

Charlette Midget was liable for failing to provide Lisle medical care.

**ANSWER: Defendants lack knowledge sufficient to form a belief about the truth of these allegations.**

Lisle continued to file grievances and request Menard employees to review his grievances See Exhibit 23  Lisle again wrote to Springfield Administration Review board advising them to answer to Lisle 8-12-14 Discrimination disciplinary report which by grievance rules was to be addressed within six months the administration review board failed to respond to Lisle grievances in 6 months after Lisle again advise them to review grievance therefore after failing to review Lisle grievance within 6 months and after Lisle wrote Springfield advising them after 6 months to review the grievance the administration review board has waived all rights to respond to Lisle grievance and is procedural barred so the defendants is barred to argue about Lisle 8-12-14 discrimination grievance.  See Exhibit 24 Lisle affidavit.

**ANSWER:   Defendants deny failing to review grievances that they received. Defendants lack knowledge sufficient to form a belief about the truth of the allegations regarding Plaintiff's interaction with the ARB.**

It should be noted Lisle suffers from a severe mental illness and he is currently taking pyschtropic (sic) drugs.

**ANSWER:   Defendants lack knowledge sufficient to form a belief about the truth of Plaintiff's mental state or his medication.**

Spiller and Ramon conspired together to frame Lisle for his 8-12-14 disciplinary ticket by failsefying (sic) Lisle had 7% alchol (sic) in his disciplinary report and ramon (sic) writing Lisle

disciplinary report were (sic) contraband was found in Thurman box. This made Spiller and Ramon liable.

**ANSWER:    Defendants lack knowledge sufficient to form a belief about the truth of the allegations in this paragraph.**

L.T. Sammuel was liable for failing to inform the adjustment committee that inmate Thurman confessed to having contraband and not informing the warden that his fellow employees called Lisle a coon a racist name do (sic) to the color of his skin all defendants name mentioned were liable for violating Lisle constitutional rights see all arguments (1-24)

**ANSWER:    Defendants lack knowledge sufficient to form a belief about the truth of the allegations in this paragraph, but deny violating Plaintiff's rights whatsoever.**

and Administration Review board was liable for failing to inform Menard about Lisle suicide attempts and violation of his administration remedies. And Menard grievance officer was liable for failing to properly address Lisle grievances and conspired with warden to delay Lisle grievance process.

**ANSWER:    Defendants lack knowledge sufficient to form a belief about the truth of the allegations about the ARB, but deny Plaintiff has a federal right to have his grievance answered. Defendants deny violating Plaintiff's rights whatsoever.**

Lisle was under atypical and significant hardship where he served over 120 days in segregation lost phone privileges contact visit privileges commissary lost and grad demotion for his disciplinary proceedings which was due to his due process being violated do (sic) to his witness not being called to adjustment hearing.

**ANSWER:   Defendants deny Plaintiff was subjected to atypical or significant hardships by serving time in segregation, and the loss of privileges that accompany**

**segregation sentence.  Defendants deny Plaintiff was denied the right to call any necessary witness.  Defendants deny Plaintiff had a right to due process.  Defendants deny Plaintiff's due process rights were violated.  Defendants deny violating Plaintiff's rights whatsoever.**

<u>EXHAUSTION OF LEGAL REMEDIES</u>

6.      Is there a prisoner grievance procedure in the institution  Yes

If your answer is YES, what steps did you take?

A.      Plaintiff wrote "numerous" grievances to Menard Correctional Counselor Susan Hill, he never received a response from his grievance which allege a (Discrimination) (Staff Conduct) (Disciplinary Report) also he allege other due process violation complaints steaming (sic) from his 8-12-14 Disciplinary Report.

B.      Plaintiff then forward the same grievance complaint above steaming (sic) from his 8-12-14 Disciplinary Report to the grievance officer at Menard Correctional Center.

C.      On 8-28-14 plaintiff grievance he filed to both parties stated above was returned to him through the Menard institution mail where the Warden Kimberly Butler stated his grievance steaming (sic) from his 8-12-14 Disciplinary Report was being denied do (sic) to NO: an emergency is not substantiated offender should submit this grievances in the normal manner.  See <u>Exhibit 1</u>

D.      On 9-3-14 plaintiff filed the grievances stated above which Warden Butler denied as (No Emergency) to the Administrative Review Board of inmate issues filing a complaint that Warden Butler forge his grievance by marking a (X) on his grievance as non emergency to stop him from filling his grievance steaming (sic) from the 8-12-14 Disciplinary Report.  See <u>Exhibit 2</u>

E.      On 9-3-14 plaintiff re-wrote and resubmitted a grievance re-alleging all complaints mentioned above steaming (sic) from his 8-12-14 Disciplinary Report to the grievance officer also

see Exhibit 2 where plaintiff made the Administrative Review Board aware that he re-summited (sic) his grievance properly.

F.      Plaintiff also wrote States Attorney Lisa Madigan advising her that Menard Correctional Employees were trying to prevent him from summitting (sic) his grievances.

G.      Plaintiff again sent Kimberly Butler a notice to respond to his grievance steaming (sic) from 8-12-14 Disciplinary Report  See Exhibit 3

H.      Menard grievance officer finally responded to plaintiff 8-12-14 Disciplinary Report discrimination grievance.

I.      In the year of 2014 plaintiff appealed the grievance stated above steaming (sic) from his 8-12-14 disciplinary report to the Administrative Review Board of inmate issues.

J.      According to I.D.O.C. Rules of Grievance Procedure the Administrative Review Board of inmate issues failed to respond address or answer within 6 months to plaintiff grievance that he appealed steaming (sic) from the "grievance officer" response of Menard Correctional Center steaming (sic) from his 8-12-14 Disciplinary Report Discrimination violation grievance. See Exhibit 4-5 I.D.O.C. Grievance Procedure.

K.      Plaintiff therefore states that the Defendant(s) have waived their right to address plaintiff grievance and therefore any response in this 1983 civil suit is to be considered procedural barred.

L.      Following the Complaint plaintiff filed and notified the administrative Review Board asserting that Warden Butler forge his grievance in a conspiracy with Menard Correctional Employees to conceal the discrimination violation.  By plaintiff being a mental health patient with a mental disability it caused psycholigical (sic) effect and mental infliction of pain that caused plaintiff to try to commit suicide  See Exhibit 2

M.      On 9-15-14 and 9-12-14 plaintiff filed two separate grievances asserting denial of medical treatment and staff conduct

N.      Menard Correctional Center continued to avoid plaintiff 9-5-14 and 9-12-14 grievance complaints which forced him to continue to advise Menard Correctional Center to address both grievances he also contacted Freedom of Information requesting a grievance log of the year 2014 of all filed grievances by plaintiff he was only sent the August log by the Freedom of Information  See Exhibit 6-7

O.      On 9-22-14 Counselor Brad Bramlet answered both of plaintiff grievances field on 9-5-14 and 9-12-14 medical treatment and staff conduct attaching one response from a Charlotte Miget, RN answering both 9-5-14 and 9-12-14 medical treatment and staff conduct.

P.      On 11-7-14 plaintiff appealed both grievances from 9-5-14 and 9-12-14 response of Charlotte Miget RN reply to the Menard Correctional grievance officer also revealing witnesses to support plaintiff grievance  See Exhibit 10

Q.      Menard grievance officer conspired with Menard Correctional Center employees to prevent Plaintiff rom appealing his grievance by only replying to plaintiff 9-5-14 grievance and refusing to also address plaintiff 9-12-14 grievance.

R.      Charlotte Miget RN replied with one response to plaintiff 9-5-14 and 9-12-14 grievances which he appealed to the grievance officers.  See Counselor Bramlet reply Exhibit 8-9

S.      Plaintiff the appealed the complaints stated above on 12-10-14 to the Administrative review board of inmate issues showing that Menard grievance system tried to prevent him from having his 9-12-14 grievance addressed which was addressed by Counselor Bramlet and Charlotte Miget RN on one response  See Exhibits 11-12

T.      On 1-14-15 T.S. Keen of the administrative review board answered plaintiff 9-12-14 grievance stating send a response  See Exhibit 13

U.      However plaintiff sent the administrative review board a copy of Charlotte Miget RN one response to his 9-5-14 and 9-12-14 grievance explaining that menard grievance officer refused to address his 9-12-14 grievance.

V.      Administrative Review Board only answered plaintiff 9-5-14 grievance stating it was "untimely" summitted (sic).

W.      Plaintiff again informed the administrative review board he seeks to appeal his 9-5-14 grievance that was responded to as untimely showing that it was timely do (sic) to him being on suicide watch and he had no access to any property or any way to know he had received a answer from his grievances and 30 days to appeal and once plaintiff got off suicide watch he was giving his property and responded to this grievance which made it finaly  See Exhibit 14

X.      Administrative review board responded by dening (sic) plaintiff grievance stating plaintiff grievance was approperate (sic) addressed   See Exhibit 14

Y.      After "continuely" (sic) exhausting his grievance procedure and being prevented to properly exhaust his grievance plaintiff now files his 1983 suit.

Z.      Also see Exhibits 15-16 affidavits from other Menard prisoner who also filed complaints about Menard grievance process, all parties mentioned became liable by violating Lisle exhaustion remedie process.

**ANSWER:   Defendants deny Plaintiff properly exhausted his administrative remedies using the established grievance procedure.**

<u>LEGAL CLAIMS</u>

7.     Plaintiffs reallage and incorporate by references paragraphs 1-7  The Racial Discrimination and Procedural due process violation punishment and segregation and failure to provide witness and disciplinary offense and due process trying to prevent plaintiff from exhaustion of administrative remedies and denial of medical care and serious medical needs see all arguments (1-24) violated plaintiff (Steven D. Lisle Jr) rights and constituted a <u>Fourteenth amendment</u> due process and equal protection and procedural due process and <u>Eighth amendment</u> violation cruel and unusual punishment.  The plaintiff has no plain adequate or complete remedy at law to redress the wrongs described herein.  Plaintiff has been and will continue to be irreparably inured by the conduct of the defendants unless this court grants the money damages and any other relief which the court desires and plaintiff seeks.

**ANSWER:     Defendants deny violating Plaintiff's rights whatsoever, or that Plaintiff is entitled to any relief whatsoever.**

<u>PRAYER FOR RELIEF</u>

**Defendants deny Plaintiff is entitled to any relief whatsoever including declaratory relief or money damages.**

<u>JURY DEMAND</u>

**Defendants demand a trial by jury.**

<u>AFFIRMATIVE DEFENSES</u>

**1.     Qualified Immunity**

At all times relevant herein, Defendants acted in good faith in the performance of their official duties and without violating Plaintiff's clearly established statutory or constitutional rights

of which a reasonable person would have known. Defendants are therefore protected from suit by the doctrine of qualified immunity.

### 2. Sovereign Immunity

Under the Eleventh Amendment, Plaintiff's complaint for monetary damages against Defendants in their official capacities is barred by sovereign immunity.

### 3. Failure to Exhaust Administrative Remedies

Plaintiff has filed suit concerning prison conditions while in the Illinois Department of Corrections.  Plaintiff has failed to exhaust his administrative remedies prior to the initiation of this cause of action as is required before filing suit under 42 U.S.C. § 1983.  Plaintiff's claims are barred by the Prison Litigation Reform Act (42 U.S.C. § 1997e(a)) and *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532 (7th Cir. 1999).

WHEREFORE, for the above and forgoing reasons, Defendants request this Court deny Plaintiff any of the relief requested.

Respectfully submitted,

LINDA CARTER and MARVIN BOCHANTIN,

Defendants,

LISA MADIGAN, Attorney General, State of Illinois

Daniel Rock, #6300694
Assistant Attorney General
500 South Second Street
Springfield, Illinois  62701
(217) 782-9026  Phone
(217) 524-5091 Fax
drock@atg.state.il.us

Attorney for Defendants,

By:  s/ Daniel Rock
DANIEL ROCK
Assistant Attorney General

No. 15-965-MJR-SCW

**CERTIFICATE OF SERVICE**
**Lisle v. Butler, et al., SDIL Case No. 15-965**

I hereby certify that on October 4, 2016, the foregoing document, *Answer to Plaintiff's Complaint [d/e 1] and Jury Demand*, was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Maxwell D. Huber          mhuber@cassiday.com
Timothy P. Dugan          tdugan@cassiday.com

and I hereby certify that on the same date, I caused to be mailed by United States Postal Service, a copy of the foregoing document to the following non-registered participant:

Steven D. Lisle, R40159
Pontiac Correctional Center
Inmate Mail/Parcels
Post Office Box 99
Pontiac, Illinois  61764

                              s/Daniel Rock
                              Daniel Rock, #6300694
                              Assistant Attorney General
                              500 South Second Street
                              Springfield, Illinois  62701
                              (217) 782-9026  Phone
                              (217) 524-5091  Fax
                              drock@atg.state.il.us