# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

STEVEN D. LISLE,

        Plaintiff,

v.

KIMBERLY BUTLER, LIEUTENANT
WELBORN, C. MCCLURE, SUSAN
HILL, HORMAN, JANA SOUTH,
JORDANA REEVES, and CALE
YOUNG,

        Defendants.[1]

Case No. 3:15-CV-00965-NJR-GCS

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Steven D. Lisle is an African American inmate in the Illinois Department of Corrections ("IDOC") who filed this suit under 42 U.S.C. § 1983 for alleged violations of his constitutional rights.

In his First Amended Complaint, Lisle alleges that while he was incarcerated at Menard Correctional Center ("Menard"), he received a false disciplinary ticket for contraband and was placed in segregation (Doc. 128). Lisle notes that his cellmate, who was white, took responsibility for the contraband but was ultimately found not guilty of the allegations. Lisle, however, was found guilty. He overheard prison personnel make

---

[1] The Clerk of Court is **DIRECTED** to change "C. McClure" to "Christopher McClure," "Lieutenant Welborn" to "William Welborn," and "Hormann" to "Jodi Hormann" to reflect Defendants' proper names as provided in their answers.

racist remarks against him and he believes the disciplinary proceedings were race-motivated.

While in segregation, Lisle made several suicide attempts. Correctional officers and medical staff at Menard were aware of Lisle's mental health issues and history of suicide attempts, but failed to take proper measures to ensure his safety. Once Lisle was placed on suicide watch, Jana South, a nurse at Menard, told Lisle that if he was going to kill himself, he should do it right. Lisle was forced to sleep naked on a cold steel bed without a mattress or bedding, and was denied medical attention. Lisle alleges he asked for medical attention but never received any treatment. He states grievance counselors turned a blind eye to his numerous grievances complaining of the false disciplinary ticket, disparate racial treatment, suicide attempts, lack of medical care, and inhumane conditions while on suicide watch.

United States District Judge Michael J. Reagan presided over this case until his retirement earlier this year. In December 2017, Judge Reagan granted partial summary judgment and dismissed several of Lisle's claims (Doc. 186). Judge Reagan held, in part, that Lisle's Eighth Amendment claim against South for mocking his suicide attempts fails as a matter of law. He concluded, "Defendant South's statement that if Plaintiff were to attempt to kill himself, he should do it right, if truly said, is reprehensible. The statement alone, however, is not sufficient to allow Plaintiff to recover against South." The following claims survived summary judgment:

> **Count 3:** Deliberate indifference for intentionally disregarding a known risk of suicide against Jordana Reeves, William Welborn, Jodi Hormann, Christopher McClure, and Cale

Young;

**Count 4:** Deliberate indifference against South for ignoring Lisle's request for a doctor; and

**Count 10:** Deliberate indifference against Susan Hill for failure to respond to his grievances related to his suicide attempt.

Judge Reagan presided over a jury trial on the remaining counts in January 2018 (Docs. 252-55). After the jurors were selected, but before they were sworn in, Lisle's counsel raised an objection under *Batson v. Kentucky*, 476 U.S. 79 (1986) "for Wexford's exercise of its preemptory strikes for racially motivated reasons and exercising two of the three preemptory on black jurors" (Doc. 252, p. 62). Judge Reagan responded,

> You should have made them while we were doing it. I think you waived at this juncture. We can make a record. I know we do have an African American on the jury. Without us going backwards now and reinventing the wheel, I think it untimely and I deny on that basis. I do note juror 10 is African American and that juror was tendered to both Wexford and IDOC. They both accepted that juror. Juror 9 was stricken by IDOC. That was an African American. Juror 18 was stricken by Wexford, African American. Juror 23 is stricken by [Wexford].

(*Id.* at p. 64). Although he rejected the challenge as untimely, Judge Reagan gave defense counsel an opportunity to offer a race-neutral response.

IDOC's counsel stated that Juror 9 testified she had interactions with individuals in Illinois prisons and county jails, had discussed those individuals' experiences with them, and believes those conversations would impact her decision in this case (*Id.* at pp. 64-65). Wexford's counsel stated Jurors 18 and 23 testified that members of their families were incarcerated and appeared as if they would be unable to treat Defendants in this case fairly (*Id.* at p. 65). Judge Reagan found the reasons to be race-neutral and the

jury was sworn in (*Id.* at pp. 64-66).

After a two-day trial, the jury found in favor of Lisle on his deliberate indifference claims against Reeves, Welborn, Hormann, and McClure and awarded him compensatory damages only (Doc. 217). The jury found in favor of Young, South, and Hill on the remaining counts (*Id.*).

Lisle appealed, and the Seventh Circuit found that Judge Regan erred when he granted summary judgment for South on Lisle's claims against her for mocking his suicide attempts (Doc. 261, Ex. 1). The Seventh Circuit noted that "pain sufficient to constitute cruel punishment may be physical *or psychological*" (*Id.* at p. 18) (quoting *Beal v. Foster*, 803 F.3d 356, 357-38 (7th Cir. 2015) (internal alterations omitted)). And, "[w]ith the understanding that the Eighth Amendment also protects psychologically vulnerable inmates against psychological pain deliberately inflicted by correctional officers, Nurse South's alleged statements, if made, went beyond 'simple verbal harassment'" (*Id.*).

Although summary judgment was inappropriate, the Seventh Circuit noted that on remand, this Court should consider whether 42 U.S.C. § 1997e(e) impacts Lisle's claim (*Id.* at p. 20). Section 1997e(e) provides, "No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." This provision applies only to compensatory damages, not nominal or punitive damages involving no physical injury. *Calhoun v. DeTella*, 319 F.3d 936, 941 (7th Cir. 2003).

The Seventh Circuit also found that Judge Reagan improperly analyzed Lisle's

*Batson* challenge during jury selection. In *Batson v. Kentucky* the Supreme Court held that "the State denies a black defendant equal protection of the laws when it puts him on trial before a jury from which members of his race have been purposefully excluded." 476 U.S. 79, 85 (1986). "[T]rial judges have considerable flexibility and discretion in managing jury selection, including how they provide a reasonable opportunity to raise *Batson* challenges" (Doc. 261, Ex. 1, p. 11). "[T]he dismissal of the venire or the swearing of the jury is the presumptive deadline for making *Batson* challenges." *United States v. Williams*, 819 F.3d 1026, 1029 (7th Cir. 2016). In this instance, the Seventh Circuit determined Lisle's challenge was timely because he objected within minutes after the third or fourth black potential juror was struck (Doc. 261, Ex. 1, p. 11).

Moreover, the Seventh Circuit found that the error was not harmless because Judge Reagan's effort to "make a record" fell short (*Id.* at p. 12). There are three steps to analyzing a *Batson* challenge: (1) if a party suspects peremptory strikes, he must object and make a *prima facie* case of racial discrimination; (2) if the Court finds the party has made a *prima facie* showing, the burden shifts to the striking party to provide a race-neutral reason for the strike; and (3) the trial judge must "determine whether the . . . the stated reasons were the actual reasons or instead were a pretext for discrimination" (Doc. 261, Ex. 1, pp. 10-11). Because Judge Reagan stated the explanations were race-neutral, but never made a credibility finding, the *Batson* analysis was incomplete. The Seventh Circuit explained that remand was warranted because there is no way to make a credibility determination from the record; "For example, the record does not show whether similarly situated white jurors were struck for similar reasons, nor did the judge

say anything about anyone's demeanor" (Doc. 261, Ex. 1, p. 14). Accordingly, the Seventh Circuit remanded for additional findings on the credibility of the defendants' race-neutral explanation for striking the black jurors.

Following remand, this Court held a status conference at which defense counsel appeared in person and Lisle appeared by video (Doc. 269). After considering the parties' positions and the Seventh Circuit's decision, it is clear that the *Batson* issue cannot be resolved, and Lisle is entitled to a new trial. As the Seventh Circuit noted, there is not enough information in the record from which to assess the legitimacy of counsels' race-neutral explanations. And because the undersigned did not conduct jury selection, a post-hoc credibility determination is not possible.

Accordingly, a new trial will be set at a later date, for a time when the Court's schedule permits. Lisle's Eighth Amendment claim against South for mocking his suicide attempts is reinstated. In sum, this case proceeds on the following counts:

**Count 3:**  Deliberate indifference for intentionally disregarding a known risk of suicide against Reeves, Welborn, Hormann, McClure, and Young

**Count 4:**  Deliberate indifference against South for ignoring Lisle's request for a doctor and mocking his suicide attempts; and

**Count 10:**  Deliberate indifference against Hill for failure to respond to his grievances related to his suicide attempt

**IT IS SO ORDERED.**

**DATED: September 24, 2019**

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**